USCA1 Opinion

 

 February 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1427 UNITED STATES, Appellee, v. JOSE A. GARCIA, Defendant, Appellant. ____________________ No. 92-1428 UNITED STATES, Appellee, v. PABLO H. GARCIA, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ ____________________ John M. Cicilline, for defendant-appellant Jose A. Garcia. _________________ Francis J. Gillan, III, for defendant-appellant Pablo H. Garcia. ______________________ Zechariah Chafee, Assistant United States Attorney, with whom _________________ Lincoln C. Almond, United States Attorney, was on brief, for appellee. _________________ ____________________ ____________________ BOWNES, Senior Circuit Judge. Defendants Pablo _____________________ Garcia and Jose Garcia (no relation) were tried jointly and convicted by a jury in federal district court for possession of cocaine with intent to distribute, in violation of Title 21 U.S.C. 841(a)(1), and conspiracy to possess cocaine with intent to distribute, in violation of Title 21 U.S.C. 846. On appeal, defendants-appellants both argue: (1) that the evidence was insufficient to support the convictions; (2) that the district judge erred in vacating the magistrate's order compelling the attendance of the government's confidential informant at a suppression hearing; and (3) that the district judge erred in failing to suppress certain evidence. In addition, defendant Pablo Garcia argues that the district judge erred in admitting evidence of his prior arrest pursuant to Fed. R. Evid. 404(b). We affirm. I. I. Background Background __________ On February 6, 1991, the Providence police executed a search warrant for narcotics and related items in the second floor apartment of a three-story tenement building at 93-95 Gallatin Street. The search warrant had been obtained pursuant to information the police received to the effect that drug trafficking was being conducted in the apartment. The police had confirmed the information by conducting a "controlled buy." In executing the warrant, the police announced their presence, waited approximately ten seconds, and receiving no response, proceeded forcibly to enter the apartment. Upon their entry, the police found the two defendants and a woman holding a child in the front room of the apartment. The woman, Altagracia Lopez, shared the front room of the apartment with Oscar Quinones, who was not present at the time of the defendants' arrest. Defendants were made to lie on the floor while the police initiated a search of the apartment. INS Special Agent Bernstein testified that he gave defendants Miranda _______ warnings in Spanish. In the closet of the back bedroom, the police found approximately ten and one-half ounces (295 grams) of suspected cocaine in one of several opaque plastic bags on the closet's floor. The substance later tested positive as cocaine, and was valued between $13,650 and $16,800. Also in the closet were articles of clothing and scattered papers, including a bill of sale and a car registration in the name of Pablo Garcia registered to the address of 93-95 Gallatin Street. Under a mattress in the front room, the police discovered a passport for Pablo Garcia and a number of notebooks with figures and names that a DEA agent testified were records of narcotics dealing. In the box spring under the mattress, the police found $1,308 in cash. Finally, on the kitchen counter, police discovered plastic ziploc bags that had been cut, and a candle and a -3- strainer. At trial, DEA agents testified that these were packaging materials for cocaine distribution. The police took Pablo and Jose separately into the room where the cocaine had been found, and asked each of them to identify a piece of clothing that belonged to them. Pablo picked out a shirt and jacket (later revealed to be a woman's jacket). Jose picked out a shirt. Also in that room were two mattresses, one of which was propped against the wall. The closet in the back bedroom was the only closet in the apartment. Both defendants took the stand at trial and testified in their own defense. While admitting that they both slept in the room in which the cocaine was found, they denied knowing that there was cocaine in the closet. Both also denied knowing of the presence of the other drug paraphernalia in the apartment or of any drug trafficking operation. Defendants presented different explanations for their presence in the apartment. Jose Garcia testified that he had lived in the back room at 93-95 Gallatin Street since the previous August or September. He said that he had been in Santo Domingo from December 23, 1990 until January 23, 1991, and that he had spent a few days in New York before returning to Providence. He returned to find that Pablo Garcia, whom he had never met, was staying in the room he -4- rented. He testified that he had been trying to move from the apartment when the arrest took place, and that he already had moved many of his belongings to a friend's home. Pablo Garcia testified that he lived in New York, but had come to Providence in February to stand trial for his arrest, in December 1990, for cocaine trafficking. The district judge had, before Pablo testified, admitted evidence of this prior arrest as probative of defendant's knowledge and intent to commit the offenses at issue. Pablo acknowledged that he was a friend of Oscar Quinones, but maintained that he did not know Jose Garcia, and that he had no real control over the room or the apartment because he was only temporarily residing there. II. II. Sufficiency of the Evidence Sufficiency of the Evidence ___________________________ Defendants both appeal the denial of their respective motions for judgment of acquittal.1 Both were convicted of possessing and conspiring to possess cocaine with the intent to distribute. Defendants assert that the prosecution failed to prove, beyond a reasonable doubt, both knowing possession of the cocaine and their participation in a conspiracy to possess cocaine. ____________________ 1 Pablo Garcia and Jose Garcia have each adopted, by reference, the other's brief. See F.R.A.P. 28(i). ___ -5- The standards governing a challenge to the sufficiency of the evidence are familiar and oft-quoted: The challenges to the sufficiency of the evidence and to the denial of the motion for judgments of acquittal raise a single issue. We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. We do not weigh witness credibility, but resolve all credibility issues in favor of the verdict. The evidence may be entirely circumstantial, and need not exclude every reasonable hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence. United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. _____________ _______________ 1991) (citations omitted). See also United States v. Lopez, ___ ____ _____________ _____ 944 F.2d 33, 39 (1st Cir. 1991). A. Substantive Offense A. Substantive Offense ___________________ The charge of possession with intent to distribute cocaine requires, in the context of this case, proof beyond a reasonable doubt that the cocaine found in the closet within the room shared by defendants was knowingly and intentionally possessed by them for purposes of distribution. See United ___ ______ States v. Vargas, 945 F.2d 426, 428 (1st Cir. 1991). ______ ______ "Possession may be actual or constructive, sole or joint." United States v. Wight, 968 F.2d 1393, 1397 (1st Cir. 1992); ______________ _____ United States v. Vargas, 945 F.2d at 428. Constructive ______________ ______ -6- possession is proved when a person "`knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'" United States v. Ocampo-Guarin, 968 F.2d 1406, 1409-10 (1st _____________ _____________ Cir. 1992) (quoting United States v. Lamare, 711 F.2d 3, 5 _____________ ______ (1st Cir. 1983)). See also United States v. Vargas, 945 F.2d ___ ____ _____________ ______ at 428 (constructive possession found where defendant was sole tenant and occupant of apartment immediately prior to police raid); United States v. Barnes, 890 F.2d 545, 549-50 _____________ ______ (1st Cir. 1989) (constructive possession found where defendant leased apartment that was jointly occupied with others), cert. denied, 494 U.S. 1019 (1990); United States v. _____ ______ _____________ Calle-Cardenas, 837 F.2d 30, 32 (1st Cir.) (reasonable for ______________ jury to find defendant exercised dominion and control over area where contraband was found because three occupants were dressed similarly and all three names appeared on door at the time of the raid), cert. denied, 485 U.S. 1024 (1988). The _____ ______ government may show constructive possession through the use of either direct or circumstantial evidence. Mere presence or association with another who possessed the contraband is, however, insufficient to establish constructive possession. United States v. Wight, 968 F.2d at 1397; United States v. ______________ _____ _____________ Batista-Polanco, 927 F.2d at 18. _______________ This case is very similar to United States v. _____________ Vargas, 945 F.2d 426, and the analysis flows accordingly. In ______ -7- Vargas, a search warrant was executed at defendant's ______ apartment when defendant was playing cards in a kitchen with, among others, an alleged co-conspirator. The search uncovered: one kilogram of cocaine concealed behind a wooden baseboard in a bedroom with the co-conspirator's passport; drug ledgers on top of a bureau and $2,400 in a jacket pocket in the only other bedroom, and a narcotics notebook in open view in the kitchen. We affirmed both the possession and the conspiracy charges. On the possession charge, we held that there was sufficient evidence from which the jury could have found that defendant enjoyed either exclusive or joint dominion and control of the apartment during the days preceding the police raid. We found that there was ample circumstantial evidence for a finding that the cocaine was intended for distribution: from the quantity it was reasonable to infer that the cocaine was not merely for personal consumption and such inference was buttressed by the large amount of cash and the drug records in open view. In language directly apposite to this case, we concluded that, "it would be reasonable to infer that no non-occupant, other than a confidant of the tenant, would deposit a valuable cache of contraband in a bedroom of an unsuspecting tenant's apartment from which retrieval would be much more difficult at best, and the risk of discovery and loss far greater, than if a more accessible and closely -8- controlled location were used or the secret were shared with the tenant." United States v. Vargas, 945 F.2d at 429. _____________ ______ Similarly, the evidence in this case was sufficient to permit a rational jury to find that both Pablo Garcia and Jose Garcia constructively possessed the cocaine. They both shared dominion and control over the area where the cocaine was found. Both men admitted to living in the second floor apartment and to jointly occupying the rear bedroom where the cocaine was found; Jose exclusively for the prior five or six months, and both Pablo and Jose for the week immediately preceding the raid. At the time of the search, both told the police that the apartment was where they lived. After the search uncovered cocaine, both were separately taken into the bedroom and asked to pick out an article of clothing that belonged to them, which they did. Also found on the floor of the closet along with the cocaine were various personal papers belonging to Pablo, including car registration forms registered to 93-95 Gallatin Street. In addition, Pablo's passport, concealed along with a large amount of money and records of drug sales, was also found during the search. As we stated in Vargas, "[e]vidence sufficient to establish that ______ the accused shared dominion and control of the premises can serve as a sufficient basis for inferring a knowing possession of contraband where the evidence indicates that the accused, either alone or jointly with one or more -9- persons, intended to facilitate the possession." United ______ States v. Vargas, 945 F.2d at 428. ______ ______ There was also ample evidence from which the jury could find that the cocaine discovered was intended for distribution. The quantity of cocaine (295 grams), the large amount of cash, the drug records, and cocaine paraphernalia in plain view, were all links in a chain of evidence from which intent to distribute cocaine could be found. See ___ United States v. Desmarais, 938 F.2d 347, 352 (1st Cir. 1991) _____________ _________ (intent to distribute reasonably inferable from possession of controlled substance and related paraphernalia). B. Conspiracy B. Conspiracy __________ "The gist of conspiracy is an agreement to disobey or to disregard the law." United States v. Drougas, 748 F.2d _____________ _______ 8, 15 (1st Cir. 1984). The government must prove both "intent to agree and intent to commit the substantive offense." Id. "Due to the clandestine nature of criminal ___ conspiracies, the law recognizes that the illegal agreement may be either 'express or tacit' and that a `"common purpose and plan may be inferred from a development and collocation of circumstance." ' " United States v. Sanchez, 917 F.2d 607 _____________ _______ (1st Cir. 1990) (citations omitted), cert. denied, ___ U.S. _____ ______ ___, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991). See also United ___ ____ ______ States v. Tejeda, 974 F.2d 210, 212 (1st Cir. 1992). Thus, a ______ ______ conspiracy may be established through circumstantial -10- evidence, United States v. Ocampo, 964 F.2d 80, 82 (1st Cir. _____________ ______ 1992), and to prove its case the government is required to demonstrate only a tacit understanding between the conspirators. United States v. Olivo-Infante, 938 F.2d 1406, _____________ _____________ 1410 (1st Cir. 1991). But mere presence at the scene of a crime is insufficient to prove membership in a conspiracy. United States v. Ocampo, 964 F.2d at 82 (citing United States _____________ ______ _____________ v. Francomano, 554 F.2d 483, 486 (1st Cir. 1987)). __________ The evidence viewed in the light most favorable to the verdict, together with all reasonable inferences to be drawn therefrom, permitted a rational jury to find both defendants guilty beyond a reasonable doubt of conspiracy to possess cocaine with the intent to distribute. See United ___ ______ States v. Tejeda, 974 F.2d at 212. ______ ______ III. III. District Judge's Decision to Vacate District Judge's Decision to Vacate ___________________________________ Order Compelling Attendance of Order Compelling Attendance of ______________________________ Confidential Informant at Hearing Confidential Informant at Hearing _________________________________ Defendant Pablo Garcia argues that the district court erred in vacating the magistrate-judge's order compelling the attendance of the confidential informant at an evidentiary hearing to be held by the district judge.2 The magistrate first issued a pretrial order on June 11, 1991, ____________________ 2 Although we treat this issue and the following issue involving motions to suppress as arguments presented below and on appeal by Pablo Garcia, we acknowledge that Jose Garcia has adopted the arguments. See footnote 1. ___ -11- which required that the government arrange communication between the confidential informant and the defense "to the extent that said person is willing to communicate." On July 9, defendant Pablo Garcia filed a motion with the magistrate asking that the government be ordered to comply with the pretrial order. On September 5, the magistrate issued a second order stating, in pertinent part, that, the person who bought cocaine at 95 Gallatin Street, 2nd Floor on behalf of the police, be served by the United States Marshal Service, through the United States Attorney, with a copy of this order to compel attendance of this witness at a Motion to Suppress hearing to be held by Judge Lagueux at a date, time and place to be fixed and specified by Judge Lagueux. Counsel for the Defendant shall be allowed to meet with such witness just prior to said hearing. The government appealed this second motion to the district court judge.3 The district judge held a hearing on the government's appeal. He determined that the defendant failed to make the preliminary showing as required by Franks v. ______ Delaware, 438 U.S. 154 (1978), in order for the court to ________ conduct an evidentiary hearing on the validity of the search warrant. The judge explained that it appeared that the magistrate's order assumed that the district judge was going ____________________ 3 Local Rule 32(b)(2) provides in pertinent part that, "[a]ny party may appeal from a magistrate's determination made under this rule within 10 days after the issuance of the magistrate's order." -12- to conduct a hearing, that the defense had failed to make a proper case for the hearing, and that, absent a hearing, there was no requirement that the informant appear. At a later hearing on October 31, 1991, the judge refused to grant defendant a subpoena ex parte, and delayed determination of __ _____ whether the informant could be subpoenaed until the appropriate time at trial. Pablo Garcia never renewed his motion for a subpoena at trial. A magistrate's discovery order may be set aside where the order is clearly erroneous or contrary to law. Fischer v. McGowan, 585 F. Supp. 978, 984 (D.R.I. 1984); _______ _______ Pascale v. G.D. Searle & Co., 90 F.R.D. 55, 59 (D.R.I. 1981); _______ _________________ 28 U.S.C. 636 (b)(1)(A); Local Rule 32(b)(2). The district judge determined that the magistrate's order was clearly erroneous because it compelled the confidential informant to attend a suppression hearing when the district judge had not yet determined whether he would conduct such a hearing. We find that the district court properly vacated the magistrate's order. IV. IV. The Suppression Motions The Suppression Motions _______________________ A. Probable Cause A. Probable Cause ______________ Defendant Pablo Garcia challenges the district court's denial of his motion to suppress evidence seized during the search of the apartment on the ground that there -13- was no probable cause for the officers to execute the search. In particular, he asserts that the affidavit underlying the search warrant upon which the search team relied was deficient. The search warrant was issued by a state court judge for the state of Rhode Island upon the affidavit of Detective Zammarelli. That affidavit, in essence, stated: that Detective Zammarelli had reason to believe that a large- scale drug operation was being conducted out of the second floor apartment of 93-95 Gallatin Street; that he met with a reliable confidential informant who told him that two Hispanic persons were storing and selling drugs; that the informant had seen large amounts of cocaine in the apartment; and that, to corroborate this information, Detective Zammarelli executed a "controlled buy" through the informant. The affidavit fully described the "controlled buy." Detective Zammarelli reported searching the informant prior to the buy and finding no contraband on him. He stated that he gave the informant a sum of U.S. currency, followed him to the apartment, watched him enter the front door of 93-95 Gallatin Street, and observed him exit a few minutes later from the same door. Next, he stated in the affidavit that the informant then handed Detective Zammarelli a quantity of cocaine, reporting that he had purchased the substance from the Hispanic male who resided in the second floor apartment. Detective Zammarelli stated that he made another search of -14- the informant and found no contraband. Later, upon testing the substance, Detective Zammarelli confirmed that it was cocaine. The district court determined that there was sufficient probable cause stated on the face of the affidavit, finding that the information provided therein would lead a reasonable person to believe that cocaine was being sold from the second floor apartment. We review the district court's decision to uphold the warrant only for clear error. United States v. Nocella, _____________ _______ 849 F.2d 33, 39 (1st Cir. 1988); United States v. Figueroa, _____________ ________ 818 F.2d 1020, 1024 (1st Cir. 1987). In evaluating the sufficiency of an affidavit, we afford great deference to a magistrate's determination of probable cause. Illinois v. ________ Gates, 462 U.S. 213, 236 (1983) (citing Spinelli v. United _____ ________ ______ States, 393 U.S. 410, 419 (1969)). ______ The standard applied in determining the sufficiency of an affidavit is a "totality of the circumstances" test. Illinois v. Gates, 462 U.S. at 238. The affidavit is to be ________ _____ interpreted in a common-sense rather than a hypothetical or hypertechnical manner. See id.; United States v. Ventresca, ___ ___ _____________ _________ 380 U.S. 102, 109 (1965); United States v. Cochrane, 896 F.2d _____________ ________ 635, 637 (1st Cir.), cert. denied, 496 U.S. 929 (1990); _____ ______ United States v. Calle-Cardenas, 837 F.2d at 31. _____________ ______________ -15- Defendant argues that the affidavit is inadequate because the detective failed to establish the reliability of the confidential informant. More generally, he argues that this affidavit is the sort of "bare bones" affidavit that the Supreme Court criticized in United States v. Leon, 468 U.S. _____________ ____ at 915. We disagree with both of these contentions. Detective Zammarelli confirmed the information with which the confidential informant provided him by carrying out a carefully-executed "controlled buy." Given its greatest force, defendant's argument against this corroboration was that one and the same informant was the source of the information and the actor in the "controlled buy," and that the informant might have stashed cocaine elsewhere in the building out of the sight of the detective. This possibility, defendant posits, undercuts the reliability of the informant. Although defendant's argument is possible, it is not probable and strains credulity on a common-sense reading. We find that both the issuing state court judge and the district judge drew a reasonable inference of probable cause that there was drug trafficking in the second floor apartment of 93-95 Gallatin Street. We affirm the denial of the motion to suppress the evidence seized pursuant to the warrant. B. Execution of Warrant B. Execution of Warrant ____________________ -16- Pablo Garcia next challenges the denial of his motion to suppress certain statements made and evidence seized during the search of the apartment on the ground that the execution of the search warrant was unlawful, resulting in an unconstitutional search and seizure. In reviewing a denial of a suppression motion, we must uphold the district court's findings unless they are clearly erroneous; the court's ultimate conclusion, however, is subject to plenary review. United States v. Sanchez, 943 _____________ _______ F.2d 110, 112 (1st Cir. 1991) (citations omitted). We will uphold the denial of the motion to suppress if any reasonable view of the evidence supports it. Id. (citing United States ___ _____________ v. Veillette, 778 F.2d 899, 902 (1st Cir. 1985), cert. _________ _____ denied, 476 U.S. 1115 (1986)). See also United States v. ______ ___ ____ _____________ Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990) (district court's ____________ choice between two competing interpretations of the evidence cannot be clearly erroneous). At the time of the execution of the search warrant, defendants were watching television in the front room of the apartment with co-tenant, Altagracia Lopez. Detectives Della Ventura and Zammarelli were part of the search team at the apartment's front door. Detective Della Ventura testified that he knocked loudly on the door and shouted "Police, search warrant, open the door." After waiting approximately ten seconds without receiving a response (Detective -17- Zammarelli estimated ten to fifteen seconds), the search team forcibly entered the apartment. Upon entering, defendants were immediately restrained. At the hearing, defendant Pablo Garcia sought to suppress all evidence seized from the apartment on the basis that the execution of the warrant was conducted in violation of the "knock and announce" rule, 18 U.S.C. 31094, and such violation rendered the subsequent search warrantless. Pablo Garcia argued, alternatively, that no knock or announcement was made at all; that the announcement was inadequate when considering the purpose of the rule; or, if the announcement was adequate, that the ten second wait before forcibly entering was, as a matter of law, not long enough. After hearing the testimony of the two police officers who executed the warrant and of Pablo Garcia, the district judge found that the police did loudly knock and announce their presence and purpose as required, and that they entered the apartment when they believed that they had been refused admission. The district judge was satisfied ____________________ 4 18 U.S.C. 3109 states in pertinent part: The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant. -18- that, in the context of a drug raid where contraband can be disposed of within seconds, the ten to fifteen second wait was a reasonable period of time, and that the officers fully complied with the "knock and announce" rule. The district court's findings are not clearly erroneous. Under the circumstances, a wait of ten seconds after knocking combined with an announcement before forced entry, was reasonable. The occupants of the apartment were reasonably believed to possess cocaine, a substance that is easily and quickly hidden or destroyed. See United States v. ___ _____________ One Parcel of Real Property, 873 F.2d 7, 9 (1st Cir.) ______________________________ (shorter wait [five to ten seconds] before entry justified by fact that officers had probable cause to believe occupants possessed cocaine, a substance that is easily and quickly removed down a toilet), cert. denied sub nom, Latreverse v. _____ ______ ___ ___ __________ United States, 493 U.S. 891 (1989). _____________ C. Adequacy of Miranda Warnings C. Adequacy of Miranda Warnings ____________________________ Finally with regard to the district court's denial of his motions to suppress, defendant Pablo Garcia argues that the law enforcement officials failed to adequately apprise him of his rights in violation of Miranda v. Arizona, _______ _______ 384 U.S. 436 (1966). Upon entering the apartment, the police restrained the defendant and placed him face down on the floor. As the search commenced, INS Special Agent Bernstein gave the -19- defendant Miranda warnings in Spanish. He specifically asked _______ defendant if he understood each right as it was read to him. After each such question, the defendant responded affirmatively. After advising defendant of his rights and being told by the defendant that he understood them, Agent Bernstein asked the defendant if he was willing to answer some questions without the presence of an attorney. Defendant agreed and told the officer he would answer questions. Agent Bernstein then asked defendant basic informational questions, such as where he lived. The answers to some of the questions were incriminating. After the discovery of the cocaine in the rear bedroom, Agent Bernstein took the defendant, alone, into the bedroom and asked him if any clothing belonged to him. Defendant responded affirmatively. Agent Bernstein then asked him to point out something that was his. Being handcuffed, defendant motioned with his head to a shirt and a jacket. Agent Bernstein identified the shirt and jacket and asked defendant if they were his; defendant answered affirmatively.5 At the suppression hearing, Pablo Garcia had sought to suppress the incriminating statements and actions he made during the search of the apartment on the ground that they ____________________ 5 Special Agent Bernstein's treatment of Jose Garcia was substantially the same, and the same analysis applies. -20- were made without an intelligent, knowing, and voluntary waiver of his Fifth Amendment rights. Defendant argued that the officer was required to specifically advise him that his answers to the informational questions could be used against him, and because he was never so advised, he could not have knowingly waived his rights. In addition, defendant argued that the warnings were inadequate because the officer should have advised defendant that anything he did could be used ___ against him, and that defendant had a right to refuse to point out such clothing that belonged to him. When an individual is taken into custody and before interrogation, Miranda requires that the individual be _______ advised: that he has the right to remain silent; that anything he says may be used against him in court; that he has the right to consult an attorney before being asked questions; that the attorney may be present during questioning; and that if he cannot afford an attorney, one will be appointed for him if he wishes. Miranda v. Arizona, _______ _______ 384 U.S. at 444. Once the warnings delineated in Miranda are _______ given and acknowledged, all interrogation must cease if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, or that he would like to seek the assistance of counsel. Id. at 444- ___ 45. -21- After being advised of his Miranda rights, the _______ accused may validly waive his right to remain silent and his right to counsel and respond to questions. See North ___ _____ Carolina v. Butler, 441 U.S. 369, 372-76 (1979); United ________ ______ ______ States v. ______ Eaton, 890 F.2d 511, 513 (1st Cir. 1989), cert. denied, 495 _____ _____ ______ U.S. 906 (1990). The determination of whether a valid waiver of the right to counsel or right to remain silent was made depends on whether the waiver was knowing and intelligent, given the totality of the circumstances and the facts surrounding the particular case, "`including the background, experience, and conduct of the accused.'" United States v. _____________ Butler, 441 U.S. at 374-75 (quoting Johnson v. Zerbst, 304 ______ _______ ______ U.S. 458, 464 (1938)). See also Edwards v. Arizona, 451 U.S. ___ ____ _______ _______ 477, 482-83 (1981); United States v. Ferrer-Cruz, 899 F.2d _____________ ___________ 135, 141 (1st Cir. 1990) ("The basic governing legal rule is that a court, in considering whether a defendant has voluntarily relinquished his Fifth Amendment rights, must examine the `totality of circumstances surrounding the interrogation.'"). An express waiver is not required. United States v. Butler, 441 U.S. at 373. What is required _____________ ______ is a clear showing of the intention, intelligently exercised, to relinquish a known and understood right. Patterson v. _________ Illinois, 487 U.S. 285, 292 (1988); United States v. Porter, ________ _____________ ______ 764 F.2d 1, 7 (1st Cir. 1985), cert. denied, 481 U.S. 1048 _____ ______ -22- (1987) (Miranda requires the officer to go further than just _______ asking accused if he understands his rights; the officer must make sure that the accused, knowing his rights, voluntarily relinquishes them). At the suppression hearing, the district court concluded that the defendant was properly advised of his rights, understood them, and knowingly waived them. The court found no compulsion in the questioning or request to pick out an article of clothing. The court concluded that defendant voluntarily and with full knowledge of his rights, responded to the officer's request and effectively waived his rights. The record supports the district court's finding. We note that the incriminating statement which the defendant sought to suppress was never elicited from the arresting officer at trial. -23- V. V. The Admission of Pablo Garcia's Prior Arrest The Admission of Pablo Garcia's Prior Arrest ____________________________________________ A. Background A. Background __________ This final issue is the most difficult one. It involves the questions of whether, and, if so, how a defendant can avoid the admission of prior bad acts by stipulating that knowledge and intent are not contested. We first rehearse in extenso what happened in the district __________ court. Prior to trial, defendant Pablo Garcia requested a ruling from the district court as to whether it would admit evidence under Fed. R. Evid. 404(b)6 of his prior arrest for dealing in cocaine. The court deferred ruling until the evidence became relevant at trial. At the start of the trial, but before the jurors were in the courtroom, the attorney for Pablo Garcia (Francis J. Gillan, III) requested that the government not be allowed to mention the 404(b) evidence in its opening and that none of the witnesses be allowed to testify as to defendant's prior arrest until the court had ruled on the admissibility ____________________ 6 Fed. R. Evid. 404(b) provides that: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. -24- of the evidence. The prosecutor stated that he had no intention of referring to the evidence in his opening and that he would instruct his witness not to mention the previous arrest. The court then stated that there would be a hearing on the question in the absence of the jury at the time the prosecutor wished to introduce the evidence. Counsel for the defendant Jose Garcia (John M. Cicilline), then informed the court that he might want to elicit testimony as to the prior arrest of Pablo Garcia in cross-examination of government witnesses. The court stated that he would rule on the question at the appropriate time. After the trial had progressed, Attorney Cicilline, counsel for Jose Garcia, informed the court that he wanted to elicit testimony about Pablo Garcia's prior arrest in cross- examination of the next government witness, a DEA agent. The court then held a hearing on the admissibility of the evidence. After hearing Attorney Cicilline on the question of relevancy, the court heard argument by Attorney Gillan, Pablo Garcia's attorney, as to why the evidence should not be admitted. The prosecutor then advised the court that he was not going to offer the evidence through the DEA agent, but that he intended to offer testimony on Pablo Garcia's prior arrest by a detective on the Providence Police Department. The detective would testify that, within the last six months, -25- he had arrested Pablo Garcia on a cocaine charge after personally witnessing the transaction in which Pablo Garcia was involved. During the course of the argument by Pablo Garcia's attorney, the court commented: Well, one of the requirements that the government must prove is that there was possession, number 1, and number two, that it was was [sic] a knowing possession. So, doesn't this evidence go to question [sic] of whether the possession was knowing? After hearing further argument by Pablo Garcia's counsel the court ruled: Well, I think the rule is clear, as has been explicated by the First Circuit with the one exception that I referred to, that this kind of evidence is admissible as proof of motive, intent, plan, knowledge, in this kind of a case where there's a charge of possession with intent to distribute, and also, a charge of conspiracy. . . . It's admissible. The prosecution can put it in. So, if the prosecution doesn't choose to put it in, one of the other defendants can bring it out. Prior to the introduction of the Rule 404(b) testimony that the court had ruled would be admissible, Pablo Garcia's attorney tried again to have it excluded. He stated, inter alia: _____ ____ Number 1, your Honor had said that this evidence was important because it would go to issue of intent to distribute. A prior sale equals an intent to distribute on this occasion. With that in mind, your Honor, and -26- reading Rubio Estrada again last night, where the Court had said that had mentioned the facts [sic] that intent was important. I would respectfully suggest that if intent was at issue, based on the testimony we heard from Detective Della Ventura and thus far from Detective Zammarelli, I wouldn't contest intent to distribute, insofar as there is more than ample evidence that whoever possessed that cocaine, possessed it with the intent to distribute. So, if the 404(b) evidence goes to the intention of someone to distribute that cocaine, I would suggest, your Honor, that if the jury finds beyond a reasonable doubt that Pablo Garcia possessed, did in fact possess that cocaine, then I would stipulate that they can find from there, that he did so with the intention to distribute that cocaine. After counsel's further argument on unfair prejudice the following colloquy took place: THE COURT: It may be. It may be. And people in your position say it's unfair prejudice. I say, it's fair prejudice because it's fair evidence against this defendant because he is being charged with knowing possession, and that's an issue in this case. He's going to tell us, and you're going to argue to the jury, that he just happened to be there, wrong place at the wrong time, doesn't know anything about cocaine trafficking. Mr. GILLAN: No, I don't say that he doesn't know anything about cocaine trafficking, just that he's not involved in this enterprise. THE COURT: Well, this evidence indicates that he is. MR. GILLAN: Thank you, your Honor. -27- THE COURT: And that's why it's relevant, and that's why it's properly admissible under the rule because there is an issue of knowing possession . . . Detective Zammarelli testified that, two months prior to the arrest of Jose Garcia and Pablo Garcia, he and Detective Della Ventura (also involved in the arrests of Pablo and Jose) arrested Pablo Garcia in Providence at a different location. Detective Zammarelli testified that he observed, through a large glass window, three men engaged in discussion. One of the men handed money to another, who began to speak with the third man, Pablo Garcia. Pablo Garcia then walked out of Detective Zammarelli's view, and returned to hand a bag of suspected cocaine to the man from whom he obtained money. Detective Zammarelli, along with Detective Della Ventura, then arrested the three men. Pablo Garcia was charged with unlawful delivery of cocaine and conspiracy. Immediately after this testimony, the court instructed the jury: . . . Mr. Foreman and members of the jury, sometimes evidence is admissible for one purpose, but it's not admissible for another purpose. So, the Court has to allow the evidence in because it's relevant on some point in the case. But I have to advise you, as jurors, that you can't consider it on some other point in the case. The rule of evidence that's involved is rule 404(b) which relates to other crimes or wrongs, prior bad acts as it's -28- often referred to. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. That's the rule. What it means is that, in a criminal trial for an offense you can't bring in evidence of other offenses, just to show that the defendant is a bad person and is likely to have committed this offense. That's not admissible for that purpose. However, it is admissible to show knowledge or intent or motive or plan. I have ruled that this evidence is admissible in this case against Pablo Garcia because two of the issues in the case relate to his knowledge and his intent. First of all, he has to have knowing possession of the cocaine in this case, and also, he is charged with not only knowing possession but possession with intent to distribute. And so, this evidence relates to his knowledge about cocaine and whether he knowingly possessed it in that apartment on Gallatin Street, and also, if he possessed it, whether he possessed it with intent to distribute. So, you may consider this evidence or prior acts by the defendant, Pablo Garcia, only on the question of his knowledge and intent in this case; and the government has the burden of proving those elements beyond a reasonable doubt. This instruction was given in abridged form in the jury charge. It is to be noted that the prosecutor did not mention the prior arrest in his closing argument. -29- On appeal, defendant argues that the district court erred in admitting the 404(b) evidence for two reasons. First, defendant contends that it was impermissible evidence of bad character and that it was unfairly prejudicial. Second, defendant argues that the district court should have accepted his attempt to foreclose admission of the evidence by offering to concede the issues of intent and knowledge to which the evidence was directed. We begin by addressing the admissibility of the evidence. B. Admissibility of the Evidence B. Admissibility of the Evidence _____________________________ Evidence of prior bad acts is admissible, pursuant to Fed. R. Evid. 404(b), when it satisfies a two-part inquiry by the trial court. The trial judge first determines whether the evidence has some "special" probative value showing intent, preparation, knowledge or absence of mistake. See United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir. ___ _____________ ____________ 1988) (quoting from United States v. Scelzo, 810 F.2d 2, 4 _____________ ______ (1st. Cir. 1987)); United States v. Moccia, 681 F.2d 61, 63 _____________ ______ (1st Cir. 1982). This evidence must overcome the absolute bar of Fed. R. Evid. 404(b), excluding evidence which demonstrates only that the defendant has a bad character. See United States v. Ferrer-Cruz, 899 F.2d 135, 137 (1st Cir. ___ _____________ ___________ 1990); United States v. Rubio-Estrada, 857 F.2d 845, 846-47 ______________ _____________ (1st Cir. 1988). Next, the judge balances the probative -30- value of the evidence against the danger of unfair prejudice, pursuant to Fed. R. Evid. 403.7 See United States v. ___ _____________ Ferrer-Cruz, 899 F.2d at 138; United States v. Rubio-Estrada, ___________ _____________ _____________ 857 F.2d at 847; United States v. Scelzo, 810 F.2d at 4; _____________ ______ United States v. Moccia, 681 F.2d at 63. _____________ ______ The admission of 404(b) evidence is committed to the sound discretion of the trial judge. We will reverse on appeal only for abuse of discretion. See United States v. ___ _____________ Flores Perez, 849 F.2d at 4. In Flores Perez, we observed _____________ ____________ that where the 404(b) evidence is probative of issues like intent and knowledge, the prohibition against admission of character evidence is construed broadly. Id. In this case, ___ the district judge admitted the evidence of Pablo Garcia's prior arrest for dealing cocaine as relevant to intent and knowledge. When he first ruled that the evidence was admissible, the district judge relied on what he called a clear rule in this circuit of admitting prior acts evidence as proof of knowledge, intent, etc., in cases involving possession and conspiracy. As we explained recently in ____________________ 7 Fed. R. Evid. 403 provides that: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. -31- 31 United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990), _____________ ________ cert. denied, ___ U.S. ___, 111 S. Ct. 2062, 114 L. Ed. 2d _____ ______ 466 (1991), we frequently have "upheld the admission of evidence of prior narcotics involvement in drug trafficking cases to prove knowledge and intent." See e.g., United ___ ____ ______ States v. Ferrer-Cruz, 899 F.2d at 138 (1st Cir. 1990) ______ ___________ (introduction of prior convictions of drug trafficking admissible to prove defendant's knowledge that bags found in car contained cocaine); United States v. Rubio-Estrada, 857 ______________ _____________ F.2d at 850 (introduction of prior drug trafficking conviction admissible to prove knowledge where defendant claimed he did not know that cocaine was in his house); United States v. Molinares Charris, 822 F.2d 1213, 1220 (1st _____________ _________________ Cir. 1987) (prior involvement with drug smuggling tended to refute claim of mere presence on boat carrying drugs), cert. _____ denied sub nom, Pimienta-Redondo v. United States, 493 U.S. ______ ___ ___ ________________ ______________ 890 (1989). In this case, there is a close nexus between the past act and the current charges. Pablo Garcia was arrested only two months earlier by two of the same officers who made the arrest precipitating the current charges. The previous arrest was for dealing in cocaine, an act which is similar and has special relevance to the charge of possession with intent to distribute cocaine. We find that the trial judge was correct in concluding that Pablo Garcia's prior arrest -32- 32 for dealing in cocaine could provide the basis for reasonable inferences going to defendant's knowledge and intent that were not based solely on bad character. Cf. United States v. ___ _____________ Francesco, 725 F.2d 817, 822 (1st Cir. 1984) (prior _________ conviction for selling cocaine admissible to show knowledge and intent to possess and distribute cocaine). We also find that the prior arrest was admissible because its probative value was not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. ___ We afford "considerable leeway" to a district court in its Rule 403 balancing, United States v. Simon, 842 F.2d at 555, _____________ _____ and we will reverse a district court's balancing only in "exceptional circumstances." United States v. Garcia-Rosa, _____________ ___________ 876 F.2d 209, 221 (1st Cir 1989), cert. denied sub nom, _____ ______ ___ ___ Alvarez v. United States, 493 U.S. 1030 (1990). This case _______ _____________ does not present any such exceptional circumstances. We note that the evidence involved an arrest, rather than a conviction, and involved two of the same officers who participated in the arrest leading to the charges at issue. These circumstances might well have exaggerated the prejudicial effects of the evidence, a factor not explicitly addressed by the district court. Nevertheless, Rule 404(b) covers prior acts, and is not ____ limited to convictions. From our review of the record, we are satisfied that there was sufficient evidence linking the -33- 33 defendant to the prior act. Moreover, the fact that Pablo Garcia was only arrested, and had not been convicted, was explained to the jury. Lastly, the district court handled the prior acts evidence with care, providing the jury with a limiting instruction after the evidence was admitted, and again instructing the jury of the scope of prior acts evidence in his final charge. C. Defendant's Offers to Concede Knowledge and Intent C. Defendant's Offers to Concede Knowledge and Intent __________________________________________________ Having found the prior acts evidence admissible, we now address defendant's argument that, because he had conceded the elements of knowledge and intent to which the evidence was directed, the evidence should not have been admitted. In support of his claim, defendant points to two statements made by defense counsel prior to the admission of the evidence. With respect to the issue of knowledge, defendant highlights an unelaborated statement made in response to the court's discussion of the prejudicial impact of the evidence that, "No, I don't say that he doesn't know anything about cocaine trafficking. . . ." With respect to the issue of intent, defendant points to his counsel's offer to stipulate to the intent to distribute in the event the jury found that Pablo Garcia, in fact, possessed the cocaine. (We excerpted the context surrounding these statements in our discussion of the background on this issue, supra.) The _____ -34- 34 combination of these two statements, defendant argues, constituted a clear offer to concede that he had the requisite knowledge and intent to possess the cocaine, and the specific intent to distribute it, if the government proved that he possessed it. For the reasons that follow, we find that the defendant failed sufficiently to remove knowledge and intent from the case, and that the trial judge did not err in admitting the evidence despite the defendant's stated concessions. Defendant relies upon our decision in United States _____________ v. Ferrer-Cruz, 899 F.2d at 139, in which we examined a ___________ similar claim "in light of" the Second Circuit's decision in United States v. Figueroa, 618 F.2d 934 (2d Cir. 1980). ______________ ________ Figueroa held that a defendant may remove issues of knowledge ________ and intent from a case by telling the court that he will not dispute those issues: provided that he expresses himself to the _________________________________________ court with sufficient clarity to justify _____________________________ the court in (a) disallowing any `subsequent cross-examination or jury argument that seeks to raise' those issues, and (b) `charging the jury that if they find all other elements beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.' United States v. Ferrer-Cruz, 899 F.2d at 139 (quoting from _____________ ___________ United States v. Figueroa, 618 F.2d at 942). The court in _____________ ________ Figueroa explained that a formal stipulation was not ________ required. Id. The offer, however, must be unequivocal. Id. ___ ___ -35- 35 See also United States v. Colon, 880 F.2d 650, 659 (2d Cir. ___ ____ _____________ _____ 1989); United States v. Mohel, 604 F.2d 748, 754 (2d Cir. _____________ _____ 1979). In Figueroa the court found ample evidence in the ________ record that the defense counsel had spoken with clarity, and had removed, not merely certain inferences that might be drawn as to the defendant's intent, but the entire issue of intent. Counsel had addressed each of the court's concerns and had stated "unequivocally," "'[t]here is no issue of intent.'" United States v. Figueroa, 618 F.2d at 940. By _____________ ________ contrast, in Ferrer-Cruz, we determined that defense ___________ counsel's response to the judge that he was not arguing mere presence did not amount to a clear offer to stipulate. United States v. Ferrer-Cruz, 899 F.2d at 139. In addition, ______________ ___________ we found that, far from having removed the issue from the case, the defense counsel had actually argued mere presence. Id. ___ To prevent the admission of bad acts evidence, a defendant's offer to concede knowledge and/or intent issues must do two things. First, the offer must express a clear and unequivocal intention to remove the issues such that, in _________ effect if not in form, it constitutes an offer to stipulate. Second, notwithstanding the sincerity of the defendant's offer, the concession must cover the necessary substantive ground to remove the issues from the case. See generally, ___ _________ -36- 36 United States v. Colon, 880 F.2d at 658 (where the court ______________ _____ determined that the stipulation the defendant presented, even if proffered with sincerity, failed to remove the issue of intent from the case). We begin our analysis by noting that it was not only the government which requested the admission of Pablo Garcia's prior arrest, but defendant Jose Garcia, as well. The two statements of concession raise somewhat different concerns, and we address each in turn. We do not believe that the defense counsel's statement as to Pablo Garcia's knowledge of drug trafficking amounted to an attempt to stipulate, nor do we believe that it removed knowledge from the case. First, the statement did not rise to the level of a clear offer to concede knowledge. It was no more than a single response, among others, in an ongoing discussion with the court about the prejudicial impact of the evidence. By contrast with the successful defendants in both Figueroa and Mohel, defense counsel did ________ _____ not pursue this concession with the court at that time, nor did he raise it again. See United States v. Figueroa, 618 ___ ______________ ________ F.2d at 940 (where defense counsel vigorously pursued his concessions with the court); United States v. Mohel, 604 F.2d _____________ _____ at 752 (where defense counsel repeatedly offered to stipulate). At best, defense counsel's statement may be construed as an offer not to argue that defendant had no ___ __ _____ -37- 37 knowledge of the workings of drug trafficking. In Ferrer- _______ Cruz, we observed that defense counsel's comments suggesting ____ that the defendant would not argue an issue (mere presence) were "quite different from saying that the judge may instruct the jury that, should it find such presence, the defense w[ould] not dispute the 'knowledge' or 'intent' needed to support the conviction." United States v. Ferrer-Cruz, 899 _____________ ___________ F.2d at 139.8 Second, defense counsel's statement of Pablo Garcia's relative knowledge about cocaine trafficking was not the sort of concession which the trial judge reasonably could be expected to assume would remove the entire issue of knowledge from this case. At most, it was a limited offer to ____________________ 8 Courts which permit the foreclosure of 404(b) evidence by concession or stipulation generally require that the defendant be willing to accept a jury charge to the effect that the issue has been removed from the case. See e.g., ___ ____ United States v. Colon, 880 F.2d at 659; United States v. _____________ _____ ______________ Figueroa, 618 F.2d at 942. Exactly who has the duty, the ________ defense counsel or the court, to suggest such an instruction, however, remains unclear. Figueroa seems to suggest that, so ________ long as the defendant raises the issue with sufficient clarity, the judge must then remove the issue from the case, by disallowing subsequent cross-examination, and by a jury charge. See United States v. Figueroa, 618 F.2d at 942. Our ___ _____________ ________ decision in Ferrer-Cruz places the burden more clearly on the ___________ defendant, as evident in the above-cited excerpt. In this case, we do not need to reach the issue because we find that defendant's statement was not a clear offer to remove knowledge from the case. We merely instruct that an offer to concede an issue which also asks for a jury charge will appear more sincere and unequivocal, and will assist both trial and reviewing courts in assessing such concession. -38- 38 foreclose certain inferences that the jury might have drawn as to knowledge. Finally, knowledge remained a focal issue in the case, and one vigorously contested by the defendant. Pablo Garcia's defense was that he did not know of the presence of ___ ___ ____ the cocaine in the closet of the room he inhabited. Pablo Garcia also argued that he did not know of the presence of the drug paraphernalia that was openly visible in the small apartment. We turn next to defense counsel's offer to stipulate to intent to distribute. By contrast with defense counsel's statement as to knowledge, this statement constituted a clear and unequivocal offer to stipulate to one essential element of the case: the specific intent to distribute. Conceding the specific intent to distribute did not, however, affect the relevance of the evidence to show defendant's knowledge and intent to possess the cocaine. Defense counsel conceded intent to distribute if the jury found possession. Because there remained an independent basis for admission of the evidence--the defendant's knowledge and intent to possess the cocaine--the district court did not err in its failure to consider the defendant's offer to stipulate in this instance. -39- 39 The effect of stipulations on the admission of 404(b) evidence is confronting us more frequently. We, therefore, proffer some guidance in this area. We note, first of all, that a serious offer to concede or stipulate to issues of intent and/or knowledge should be explored by the district court. In the final analysis, however, whether such an offer is accepted remains in the sound discretion of the district judge. If the judge determines that the offer is acceptable, the judge should take steps to assure that the defendant is aware of the contents of the stipulation and of its implications before directing the jury that it may resolve the issue against the defendant. Second, from a survey of the circuits on stipulations in the area of 404(b) evidence, we have ascertained a preference for handling the matter before trial, or early in the trial process. See e.g., United ___ ____ ______ States v. Cardenas, 895 F.2d 1338, 1342 (11th Cir. ______ ________ 1990)(noting that the defendant did nothing before trial to alert the government that it would not need to prove intent); United States v. Manner, 887 F.2d 317, 322 (D.C. Cir. 1989) _____________ ______ (relying in part on the fact that the defendant "had not offered explicitly in any pretrial hearings or motions to stipulate or concede the intent issue"), cert. denied, 493 _____ ______ U.S. 1062 (1990); United States v. Franklin, 704 F.2d 1183, _____________ ________ 1188 (10th Cir.) (noting the absence of any enforceable -40- 40 pretrial assurance that the issue would not be contested), cert. denied, 464 U.S. 845 (1983). Cf. United States v. _____ ______ ___ ______________ Miller, 974 F.2d 953, 960 (8th Cir. 1992) (declining to ______ overturn the district court on the basis of "defendant's ambiguous, last minute suggestion" to enter into an agreement with the government on intent). Although we are mindful of the importance of some flexibility in this area, we favor the practice of handling stipulations either pretrial, which is preferable, or shortly after the trial has begun for the sake of clarity both at trial and on review. Affirmed. Affirmed. ________ -41- 41