UNITED STATES of America, Appellee,

v.

**Rochelle Ardall CROWDER, Appellant.**

UNITED STATES of America, Appellee,

v.

**Horace Lee DAVIS, Appellant.**

Nos. 92–3133, 94–3108 and 93–3059.

United States Court of Appeals,
District of Columbia Circuit.

Argued En Banc Sept. 21, 1995.

Decided July 9, 1996.

Neil H. Jaffee, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant Horace Lee Davis, with whom A.J. Kramer, Federal Public Defender, Lisa B. Wright and Santha Sonenberg, Assistant Federal Public Defenders, were on the brief.

Robert E. Morin, Washington, DC, argued the cause for appellant Rochelle Ardall Crowder, with whom Mary M. Petras was on the brief. Gerald I. Fisher, appointed by the court, entered an appearance for appellant Rochelle Ardall Crowder.

Roy W. McLeese, III, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the briefs. Elizabeth Trosman, Mary D. Rodriguez, Karen E. Rhew, Geoffrey Bestor and Gregory A. Gruber (pro hac vice), Assistant United States Attorneys, entered appearances for appellee.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL, in which Chief Judge EDWARDS and Circuit Judges WALD, SILBERMAN, BUCKLEY, WILLIAMS, and ROGERS concur.

Concurring opinion filed by Circuit Judge SILBERMAN, in which Circuit Judges BUCKLEY and WILLIAMS join.

Concurring opinion filed by Circuit Judge ROGERS.

Dissenting opinion filed by Circuit Judge RANDOLPH, in which Circuit Judges GINSBURG, SENTELLE, and HENDERSON join.

TATEL, Circuit Judge:

In these consolidated cases, we address the recurring question of what effect a defendant's unequivocal offer to concede elements of a crime has on the admissibility of prior bad acts evidence under Federal Rule of Evidence 404(b). Where a defendant offers unequivocally to concede elements of a crime—intent and knowledge in these prosecutions under 21 U.S.C. § 841(a)(1)—and agrees to a jury instruction that the Government need not prove those elements, we hold that bad acts evidence offered solely to prove those elements is inadmissible because the defendant's concession of intent and knowledge deprives the evidence of any value other than what Rule 404(b)'s first sentence unambiguously prohibits: "to prove the character of a person in order to show action in conformity therewith." Because the district court in No. 93–3059 admitted bad acts evidence notwithstanding defendant's unequivocal concession of both intent and knowledge, we reverse and remand for a new trial. In No. 92–3133, in addition to admitting the bad acts evidence to show intent to distribute, which defendant had offered to concede, the district court also admitted the evidence to show knowledge of drug dealing, a fact that defendant had not conceded. We nevertheless remand for another Rule 403 balancing because, in weighing the probative value of the bad acts evidence against its prejudicial effect, the district court improperly took account of the conceded fact—intent to distribute.

## I.

The Government charged Horace Lee Davis with possession with intent to distribute and unlawful distribution of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). The Government relied primarily on an undercover officer who testified that an intermediary directed him to a seller whom he had never met. After giving the seller twenty dollars, the undercover officer waited while the seller acquired the drugs from

another individual sitting in a car parked nearby. The seller placed the drugs on a store window ledge, motioning for the officer to retrieve them. After recovering the drugs, the officer left the area and broadcast a "look-out" to the arrest team, describing both the seller and the man in the car. After the arrest team radioed the undercover officer that they had stopped two individuals fitting the descriptions in the broadcast, the officer returned to the scene and identified the two, including Davis as the seller.

Davis's defense was mistaken identity. According to his theory of the case, he had been in a nearby liquor store at the time of the drug sale and had simply walked out of the store immediately before his arrest. At trial, the liquor store clerk confirmed that Davis had been in the store until just before the arrest. Further supporting the defense theory, one of the arresting officers testified that Davis had a beer in his hand when arrested. The defense attacked the undercover officer's identification of Davis, noting the officer's inexperience (he had been undercover only three weeks at the time of the incident); his inability to identify the intermediary; his broadcast of the look-out on an unrecorded police channel; and his failure to prepare the "buy report," the only other evidence of his description of the seller, until after Davis's arrest.

Prior to trial, the Government notified Davis that it would introduce evidence of three prior cocaine sales to prove knowledge and intent. In a written opposition and again orally at trial, Davis offered to stipulate to both knowledge and intent—in other words, he offered to concede that the person who possessed the drugs both knew that they were drugs and intended to sell them—arguing that in view of this concession, the Government wanted to use the prior incidents only to show his character in violation of Rule 404(b). Davis's attorney reiterated both to the judge and to the jury that the only disputed issue in the case was whether the Government had proven possession beyond a reasonable doubt. After balancing the bad acts evidence's probative value against its prejudicial effect pursuant to Rule 403, the district court admitted the evidence

to show intent and knowledge. The jury convicted Davis on both counts.

In the second case before us, the Government charged Rochelle Ardall Crowder with possession with intent to distribute both crack and heroin. According to the Government's witnesses, three police officers in a marked car observed Crowder exchange a small object for cash with another man. Seeing one of the officers motion to him, Crowder fled. According to the pursuing officer, Crowder removed a brown object from his pocket, dropping it as he scaled a fence. The officer testified that the object was a brown paper bag containing ninety-three "ziplock" bags of crack and thirty-eight glassine packets of heroin. After placing Crowder under arrest and searching him, the arresting officer recovered a pager and $988 in currency.

Acknowledging that the chase and arrest had occurred as described by the Government's witnesses, Crowder contended at trial that he had possessed neither the paper bag nor the drugs. According to his theory of the case, the police officers came to his neighborhood looking for information about an unrelated, unsolved murder. He claimed that when he refused to talk, the police beat him and falsely accused him of possessing drugs. Defense witnesses confirmed that a detective investigating a murder had previously questioned Crowder. They also testified that they saw the same detective at the scene of Crowder's arrest, that the police beat him during the arrest, and that the officer who first motioned to Crowder from the marked car called him by name. To refute the Government's claim that he was selling drugs at the time, Crowder's witnesses testified that the object he passed to the other man was a cigarette, that the large amount of cash was for home repair materials, and that, having no telephone, he had borrowed the beeper from the mother of his eight-year-old daughter to communicate when their daughter was with him.

Crowder's first trial ended in a mistrial. Prior to the second trial, the Government advised Crowder that it would introduce evidence that he sold drugs to an undercover officer five months after the first trial. Objecting in writing and orally, Crowder offered

to concede every element of the crime except whether he possessed the drugs on the day of arrest. At a conference prior to trial, the district court reserved decision on the admission of the evidence. After the defense rested, the Government filed a second motion to introduce the evidence. Over Crowder's continued objection and willingness to concede all the elements of the offense except possession, the district court admitted the evidence to show intent to distribute and knowledge of drug dealing. The jury convicted Crowder on both counts.

Both defendants appealed. After separate panels heard oral argument, the court on its own initiative consolidated the cases, hearing them *en banc* to resolve the question of the admissibility of prior bad acts evidence when criminal defendants offer to concede the element of a crime for which the Government seeks to introduce the evidence.

## II.

 The first sentence of Federal Rule of Evidence 404(b) is unambiguous: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence, however, may be admissible under the second sentence of Rule 404(b) if introduced "for other purposes," such as showing "knowledge" or "intent." Intent and knowledge are two of the three elements—the third is possession—of a "possession with intent to distribute" charge under 21 U.S.C. § 841(a)(1), the crime charged in these cases. Thus, under the second sentence of Rule 404(b), the Government may ordinarily introduce bad acts evidence to prove intent and knowledge in a section 841(a)(1) prosecution if, under Rule 403, "its probative value is [not] substantially outweighed by the danger of unfair prejudice." If the district court admits the evidence after Rule 403 balancing, the defendant may request an instruction limiting the jury's use of the evidence to proof of intent and knowledge. *See, e.g.,* 1 EDWARD J. DEVITT, CHARLES B. BLACKMAR & KEVIN F. O'MALLEY, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 17.08 (4th ed.1992).

These cases require that we determine the effect of a defendant's offer to stipulate to— to concede—one or more of the issues for which the Government seeks to introduce the bad acts evidence. In the *Davis* case, when the Government introduced the evidence to prove the knowledge and intent elements of the crime, Davis offered to concede both. Following Rule 403 balancing, the district court admitted the evidence. In Crowder's case, the district court admitted the evidence, also after Rule 403 balancing, to show intent to distribute and knowledge of drug dealing; Crowder conceded only the former.

Appellants argue that a defense offer to concede an element of the offense when combined with a jury instruction that the Government need not prove that element renders bad acts evidence inadmissible because the evidence is irrelevant to a disputed issue and substantially more prejudicial than probative. According to the Government, an offer to concede is only one factor the district court should consider when balancing probative value against prejudicial effect.

Nine of our sister circuits have considered the admissibility of bad acts evidence following a defense offer to concede intent, reaching essentially three different positions. The Third and Fifth Circuits permit district courts to balance the evidence's prejudice against its probative value, although both circuits have held that an unequivocal offer to stipulate to intent generally renders extrinsic bad acts evidence inadmissible to show intent. *See, e.g., United States v. Jemal,* 26 F.3d 1267, 1274 (3d Cir.1994); *United States v. Yeagin,* 927 F.2d 798, 801–02 (5th Cir.1991). The Fourth, Sixth, Seventh, and Ninth Circuits similarly permit district courts to weigh probative value against prejudice, though they leave the district courts with broader discretion than the Third and Fifth Circuits. *See, e.g., United States v. Hernandez,* 975 F.2d 1035, 1039–41 (4th Cir. 1992); *United States v. Johnson,* 27 F.3d 1186, 1193–94 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995); *United States v. Brown,* 34 F.3d 569, 572–74 (7th Cir.1994); *United States v. Hadley,* 918 F.2d 848, 852 (9th Cir.1990), *cert. granted,* 503 U.S. 905, 112 S.Ct. 1261, 117

L.Ed.2d 491, *and cert. dismissed,* 506 U.S. 19, 113 S.Ct. 486, 121 L.Ed.2d 324 (1992). *But see United States v. Kramer,* 955 F.2d 479, 492–93 (7th Cir.) (Cudahy, J., concurring) (expressing view that law of circuit is mistaken), *cert. denied,* 506 U.S. 998, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992).

In contrast, the Second Circuit has squarely held that under Rule 404(b) bad acts evidence must be relevant to an "actual" issue and that an offer to stipulate to an issue removes it from the case. *United States v. Mohel,* 604 F.2d 748, 751 (2d Cir.1979). Going further, the Second Circuit has held that even in the absence of a formal offer to stipulate, defendants may remove an issue from consideration as long as the decision not to dispute the issue is made "with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed." *United States v. Figueroa,* 618 F.2d 934, 942 (2d Cir.1980) (citing *Mohel,* 604 F.2d at 754). The First, Eighth, and Eleventh Circuits align themselves with the Second, *see United States v. Garcia,* 983 F.2d 1160, 1173–76 (1st Cir.1993) (citing *United States v. Ferrer–Cruz,* 899 F.2d 135, 139 (1st Cir.1990) (Breyer, J.)); *United States v. Thomas,* 58 F.3d 1318, 1321–23 (8th Cir.1995) (citing *United States v. Jenkins,* 7 F.3d 803, 806 (8th Cir.1993)); *United States v. Taylor,* 17 F.3d 333, 338 (11th Cir.) (citing *United States v. Costa,* 947 F.2d 919, 925 (11th Cir.1991), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2289, 119 L.Ed.2d 213 (1992), *and cert. denied,* 506 U.S. 929, 113 S.Ct. 360, 121 L.Ed.2d 272 (1992)), *cert. denied,* —— U.S. ——, 115 S.Ct. 364, 130 L.Ed.2d 317 (1994), although neither the First nor the Eleventh Circuit has ever found a sufficiently explicit stipulation to require reversal.

■ Reviewing these opinions, we think the First, Second, Eighth, and Eleventh Circuits' treatment of an offer to concede is most convincing. As we see it, a defendant's offer to concede knowledge and intent combined with an explicit jury instruction that the Government no longer needs to prove either element gives the Government everything the evidence could show with respect to those two elements, doing so without risk that the jury will use the evidence for impermissible propensity purposes. In the absence of any other non-propensity purpose for the bad acts evidence, the evidence is therefore inadmissible because its only purpose could be "to prove the character of a person in order to show action in conformity therewith," precisely what Rule 404(b)'s first sentence prohibits.

This approach is faithful to the plain language of Rule 404(b) as well as to its purpose: protecting defendants from the prejudice inherent in bad acts evidence. Underlying Rule 404(b) is the concern that a jury will use prior bad acts evidence to draw general conclusions about a defendant's character and to make unfounded judgments about the defendant's conduct on a particular occasion. The problem with character evidence in general and prior bad acts evidence in particular is not that character is irrelevant—indeed, it is relevant, *see* Concurring Opinion of Silberman, J., at 1416—but that using bad acts evidence to show character can "weigh too much with the jury and . . . so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). Evidence of extrinsic bad acts thus carries the risk of prejudice—a risk long recognized in the common law and explicitly embraced by the drafters of the Federal Rules—for in our criminal justice system, " 'a defendant must be tried for what he did, not for who he is.' " *United States v. Daniels,* 770 F.2d 1111, 1116 (D.C.Cir.1985) (quoting *United States v. Myers,* 550 F.2d 1036, 1044 (5th Cir.1977)). As we have held, " '[t]he exclusion of other crimes evidence is not simply a "technicality"[;] . . . it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence.' " *United States v. Dockery,*

955 F.2d 50, 53 (D.C.Cir.1992) (quoting *Daniels,* 770 F.2d at 1118).

■ In order to protect defendants from the prejudicial effects of bad acts evidence without also weakening the Government's ability to prove its case, the conceded elements must be completely removed from the trial. A defendant's offer to concede, therefore, must be unequivocal: the concession's language must be unambiguous and the defendant may not undermine the offer by later challenging the conceded element. *See United States v. Manner,* 887 F.2d 317, 322 (D.C.Cir.1989) (bad acts evidence may be admissible when concession equivocal). To ensure that the jury clearly understands that the concession releases the Government from its burden of proof on the conceded elements, the defendant must accept, as counsel for Davis acknowledged at oral argument, an instruction stating clearly that in order to convict, the jury need find only the contested element(s). In Davis's case, the instruction describing the elements of the crime, *see, e.g.,* DEVITT at § 54.07, could be followed by something along the following lines: "By Davis's agreement, the Government need not prove either knowledge or intent. Your job is thus limited to the possession element of the crime. Therefore, in order to meet its burden of proof, the Government must prove beyond a reasonable doubt only one element of the crime, that Horace Davis was in possession of the cocaine base charged in the indictment." By offering this suggestion, we do not mean to dictate the precise language district courts must use, merely to indicate one way to explain Davis's concession to the jury. Whatever language the district court chooses would, in order to avoid confusing the jury, replace the standard instruction regarding the Government's obligation to prove every element of the crime beyond a reasonable doubt. *See, e.g.,* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 2.08. This will not, as our dissenting colleagues argue, *see Dissent* at 1427, create a problem in multi-defendant cases. Because trial judges may instruct the jury differently for different defendants, *see, e.g.,* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 2.51–2.52 (in apparent recognition of the permissibility of different instructions for different defendants, recommending the following instruction: *"Unless I have stated otherwise* to you, you should consider each instruction that the Court has given to apply separately and individually to each defendant on trial" (emphasis added)), defendants who do not concede any elements of the crime would continue to be entitled to an instruction requiring the Government to prove every element beyond a reasonable doubt. And because an unequivocal concession of an element of a crime waives a defendant's constitutional right to have the Government prove that element beyond a reasonable doubt, the district court will have to ensure that the concession is knowing and voluntary. *See Garcia,* 983 F.2d at 1175–76; *cf. Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

■ Davis had no opportunity to consider such an instruction because the district court admitted the bad acts evidence under Rule 403 to show intent. But Davis offered to concede both the intent and knowledge elements of the crime, and we think his concession was unequivocal. His written motion offered to concede "that the person who sold the undercover officer the drugs in this case had the intent to distribute any and all drugs recovered by the police." Davis's attorney also told the district court that "[o]nce the government has proved possession in this case, it's our position they've proved knowledge and intent as well." In both opening statement and closing argument, Davis's attorney reiterated that knowledge and intent were not at issue. *See* J.A. 33 ("[T]he real person who sold drugs to [the undercover officer] had the intent ... to sell the drugs ... [and] had knowledge of the drugs"); J.A. 51 ("We don't contest that the real seller had the intent to distribute the drugs."). Because this offer to concede was unequivocal, the evidence's only remaining purpose was to

show Davis's propensity. Assuming Davis's willingness to accept the type of instruction we suggest above, the district court should have excluded the evidence under Rule 404(b)'s first sentence.

That Davis conceded that *the person* with the drugs knew what they were and intended to distribute them, rather than conceding more particularly that *he* had such knowledge and intent, does not undermine the concession. *See Dissent* at 1424. Because Davis's position was that he did not possess the drugs at all, he could not have conceded that *he* knew what the substance was or that *he* intended to distribute the drugs. By conceding that the person with the drugs had knowledge of what they were and had the intent to distribute them and thus conceding that *he* had the knowledge and intent to distribute *if* the jury were to find that he possessed the drugs, Davis clearly conveyed that the only remaining element was whether he *possessed* the drugs. If, on remand, Davis reiterates his unequivocal concession and remains willing, as he was at oral argument, to accept an instruction limiting the jury's consideration to the possession element of the crime, Davis's concession would completely relieve the Government of having to prove knowledge and intent.

Our dissenting colleagues suggest that a defendant's intent to distribute drugs could also be his "motive" to possess the drugs, another permissible purpose under Rule 404(b)'s second sentence. *See Dissent* at 1424. In other words, a defendant's motive for having the drugs might be that he seeks to distribute them, thus making the evidence, according to the dissent, directly relevant to possession, the sole unconceded element of this crime. If the dissent is correct, unlike a concession of intent or knowledge, defendant's concession of motive to possess would not categorically bar the evidence under Rule 404(b)'s first sentence. In the case of knowledge and intent, both of which are elements of a section 841(a)(1) crime, the concession, combined with an instruction limiting the jury's consideration to possession, completely relieves the Government of having to prove anything with respect to either element. A defendant's concession of a motive to possess

is different. Because the Government seeks to introduce the bad acts evidence to show motive in order to have the jury infer beyond motive to an element of the crime that it must prove—possession—a concession may not completely substitute for live evidence. Of course, the Government did not offer the evidence for this purpose in Davis's case. We thus have no need to resolve the question of the admissibility of other drug offenses to show motive to possess. We note only that with respect to such evidence, as long as a defendant remains willing to concede knowledge and intent to distribute and to accept an instruction limiting the jury's consideration to possession, the district court could consider neither knowledge nor intent in its Rule 403 balancing.

 In Crowder's case, he too offered a defense based solely on the theory that he did not possess the drugs. Like Davis, he contested neither intent nor knowledge, offering instead to concede both that the "substances seized were cocaine base and heroin," and that "anybody who possessed those drugs possessed them with the intent to distribute." His attorney stated that "[t]he issue in this case is: Did he or did he not possess those drugs? That's the threshold thing that the Government has to be able to prove in this case. The rest of it in terms of what the facts—what the evidence will show, we concede." Read together, these statements amount to an unequivocal offer to concede both the knowledge and intent to distribute elements of the crime.

The district court apparently believed that Crowder undermined his concession of intent by presenting evidence that he had legitimate reasons for the beeper and $988, and a benign explanation—selling a cigarette—for the observed transaction. *See* J.A. 243. We disagree. The beeper, the money, and the transaction were each relevant to show not only Crowder's intent, but also his possession. That Crowder contested the significance the Government attributed to its evidence is therefore completely consistent with his defense that he did not possess the drugs at all. Although Crowder's evidence might also counter the probative value of the Government's evidence to show intent, this does

not make intent an issue because Crowder's concession of intent, combined with an instruction limiting the jury's consideration to possession, would completely eliminate the possibility that the jury would find against the Government on intent. Indeed, preventing a defendant wishing to concede intent from countering evidence showing possession simply because that evidence is also relevant to intent would make a defense based on lack of actual possession virtually impossible because almost all of the Government's evidence could be relevant to intent.

■ Unlike the *Davis* case, the Government also sought to introduce the evidence for another reason: to show Crowder's *modus operandi.* Although not listed in Rule 404(b)'s second sentence as a permissible purpose for prior bad acts evidence, *modus operandi* evidence may be admissible when it reveals a defendant's personal criminal "identity." *See, e.g., United States v. Connelly,* 874 F.2d 412, 416 n. 7 (7th Cir.1989); *see also United States v. Levi,* 45 F.3d 453, 455 (D.C.Cir.1995). While we have some concern that using bad acts evidence to show identity in a drug possession case is tantamount to showing propensity, we need not decide that question here. The district court did not admit the evidence for that purpose, and for good reason: The Government failed to establish any basis for admitting the evidence to show criminal identity. In order to use bad acts evidence to show criminal identity through *modus operandi,* the Government must establish not only that the extrinsic act "bears some peculiar or striking similarity" to the charged crime, *United States v. Garbett,* 867 F.2d 1132, 1135 (8th Cir.1989), but also that it is the defendant's trademark, "so unusual and distinctive as to be like a signature," *United States v. Garcia–Rosa,* 876 F.2d 209, 224 (1st Cir.1989) (citations and internal quotation marks omitted). *See generally* EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE §§ 3:10–3:14 (1995). The facts in Crowder's case do not satisfy either requirement. The subsequent sale involved clear and *black* ziplock bags of cocaine and *no* heroin, while the brown paper bag in the charged offense contained clear and *blue* ziplock bags of cocaine, as well as glassine packets of heroin. These two events are hardly "striking[ly] similar[ ]." Even if the subsequent sale resembled the charged offense, the Government presented no evidence, expert or otherwise, that the mode of packaging was distinctive to Crowder or even unusual in the drug trade. Crowder's subsequent drug sale was thus inadmissible to establish *modus operandi.*

■ In addition to admitting the evidence to show intent, the district court accepted it to show "knowledge of drug dealing." In this respect, Crowder's case is fundamentally different from Davis's. Knowledge of drug dealing, of course, is not the same as the knowledge element of the crime. The former shows a general understanding about the drug trade; the latter is a defendant's awareness that the particular substance he possessed was cocaine base. The question, then, is this: What relevance does Crowder's knowledge of drug dealing have for proving the only unconceded element of the crime, whether Crowder possessed drugs during the alleged crime? Although using bad acts evidence to show a defendant's "knowledge of drug dealing" could be a proxy for showing his character, a jury could infer possession from knowledge of drug dealing without relying on an impermissible propensity inference: A familiarity with the drug trade may make it more likely that a defendant knew where or how to acquire drugs, thus making it more likely that he possessed them at the time of arrest. Knowledge of drug dealing can therefore be a permissible purpose for the evidence under the second sentence of Rule 404(b). *Cf.* 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5245, at 506 (1978) ("Because of the varying ways in which other crimes, wrongs, or acts can prove knowledge, it is not possible to specify the requisite similarity between the charged crime and the other incident."). Although the district court admitted the evidence for that purpose, its Rule 403 balancing included consideration of the evidence's probative value to show intent to distribute. Because Crowder offered to concede intent to distribute, we remand for another "on the record determination as to whether the preju-

dicial effect of the prior bad acts evidence substantially outweighs its probative value." *See Manner,* 887 F.2d at 323. In weighing the evidence, the district court may consider its probative value to show "knowledge of drug dealing" only to the extent that "knowledge of drug dealing" shows that Crowder knew where or how to acquire drugs. In view of the attenuated nature of this inference, as well as the Government's strong evidence of possession—the observed transaction, beeper, money, and the police officer's testimony about the chase—and the likelihood of the jury misusing the evidence, we think the Government's burden, demonstrating that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice, will be heavy.

### III.

Contending that our holding will interfere with the Government's ability to prove its case, our dissenting colleagues would permit the Government to introduce bad acts evidence even in the face of an unequivocal concession. Underlying the dissent's concerns is its failure to distinguish between bad acts evidence, with its own specialized rule of admissibility, and other evidence susceptible only to the general provisions of Rules 401 and 403. As stated in the Advisory Committee Notes to Rule 401,

> [a]n enormous number of [relevancy questions] fall in no set pattern, and [Rule 401] is designed as a guide for handling them. On the other hand, some situations recur with sufficient frequency to create patterns susceptible of treatment by specific rules. Rule 404 . . . [is] of that variety; [it] also serve[s] as [an] illustration[ ] of the application of [Rule 401] as limited by the exclusionary principles of Rule 403.

The plain language of Rule 404(b) requires that district courts evaluate the admissibility of bad acts evidence by deciding whether it is inadmissible under the rule's first sentence or possibly admissible under its second. Grounded in Rule 404(b), our holding excluding bad acts evidence thus does not, as the dissent fears, encompass non-bad acts evidence intrinsic to a crime such as the details

of a victim's wounds in an assault case or the actual film in a prosecution for distributing obscene material. *See Dissent* at 1421 n.2. For the same reason, we would not exclude Crowder's beeper, *see Dissent* at 1421; it is not bad acts evidence, and in any event, it is relevant to possession. Because neither *Estelle v. McGuire,* 502 U.S. 62, 69, 112 S.Ct. 475, 480–81, 116 L.Ed.2d 385 (1991), nor *Mathews v. United States,* 485 U.S. 58, 65, 108 S.Ct. 883, 887–88, 99 L.Ed.2d 54 (1988), on which the dissent relies so heavily, *see Dissent* at 1421–1426, involved an explicit concession of an element of a crime, they are irrelevant here.

The dissent accuses us of relying on a "psychological insight" that prosecutors seek to use bad acts evidence in lieu of a concession in order to convince juries to rely on the evidence for impermissible purposes. *Dissent* at 1422. Our concern under Rule 404(b), however, is not with the prosecutor's motive, but rather with the jury's use of the evidence to show a defendant's propensity. Right or wrong, Rule 404(b) establishes a separate standard for bad acts evidence precisely because in the absence of such a standard, juries might use the evidence to make propensity inferences. With all respect, we think our colleagues' disagreement is with Rule 404(b), not with us.

Along the same lines, the dissent argues that our holding will undermine prosecutors' "legitimate trial strategy" of presenting "live testimony and documentary evidence" rather than accepting a concession and a "cold" jury instruction. Dissent at 5. The dissent does not articulate exactly how the Government's inability to introduce extrinsic bad acts evidence to prove knowledge or intent could affect its case, and with good reason—it will not. If the jury fails to find possession beyond a reasonable doubt, then the Government's inability to introduce bad acts evidence for the other two elements will not affect its case at all unless the jury uses the evidence to show possession through propensity, a purpose explicitly prohibited by the first sentence of Rule 404(b). If the jury does find possession beyond a reasonable doubt, the only way the Government's inability to introduce bad acts evidence could affect

the outcome is if the jury ignores its instruction that the Government need only prove possession and acquits the defendant because the Government failed to prove intent and knowledge beyond a reasonable doubt. Put another way, not only would the jury have to disregard a clear, simple instruction, but it also would have to acquit on a theory of the facts not advanced by either party and unsupported by any record evidence: that the defendant possessed the drugs, but either had no knowledge of what they were or had no intent to distribute them. The dissent apparently believes that juries would be less likely to develop their own theories if they hear "live" bad acts evidence on intent and knowledge than if courts clearly instruct them that they need only consider possession. Such an assumption strains credulity and ignores the principle that "[a] jury is presumed to follow a trial court's instructions ... particularly ... when ... the trial judge's instructions [are] clear, concise, [and] careful." *United States v. Jackson,* 627 F.2d 1198, 1213 (D.C.Cir.1980) (citing *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367, 83 S.Ct. 448, 463–64, 9 L.Ed.2d 357 (1963)).

Although juries sometimes do ignore instructions, we think the risk of their doing so is significantly greater under the dissent's approach, which would admit the bad acts evidence and instruct the jury to consider it only for the uncontested elements of intent and knowledge, not for the purpose prohibited by Rule 404(b). In the *Davis* case, for example, the district court instructed the jury as follows:

> If you determine that the government has proven beyond a reasonable doubt that on February 27, 1991, it was Mr. Davis who sold drugs to Officer Farmer and possessed the drugs found in the blue Jetta with the intent to distribute them, and if you also determine that he committed the similar acts as well, then you may, but you do not have to, draw an inference that in doing the acts charged in the indictment Mr. Davis knew about the drugs in the Jetta and had the intent to distribute them.
>
> You may not consider the evidence of the other arrests for any other purpose.

Specifically, you may not use the evidence to conclude that, based upon his other arrest, Mr. Davis is guilty of the offenses with which he is charged in this case.

The ability of such a limiting instruction to overcome the prejudicial effects of bad acts evidence can be, we have said, an " 'unmitigated fiction.' " *Daniels,* 770 F.2d at 1118 (D.C.Cir.1985) (quoting *Krulewitch v. United States,* 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring)). As we have observed, the " 'mental gymnastic' " such an instruction requires of the jury may be "well beyond mortal capacities." *Daniels,* 770 F.2d at 1118 (quoting *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.), *cert. denied,* 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932)). Our approach does not require juries to perform any "mental gymnastic[s]." The court excludes the bad acts evidence, instructing the jury that to convict it need find only possession beyond a reasonable doubt. Hardly confusing to juries, this approach protects defendants from the prejudicial effects of bad acts evidence without weakening the Government's ability to prove its case.

The dissent argues that removing knowledge and intent from the jury's consideration conflicts with Federal Rule of Criminal Procedure 23(a) which requires the Government's consent before defendants may waive their rights to jury trials, as well as the Supreme Court's decision in *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), upholding the rule's constitutionality. Rule 23, entitled "Trial by Jury or by the Court," only restricts defendants' ability to waive a jury trial in favor of a bench trial; it does not limit their ability to waive a jury trial altogether. Neither Rule 23 nor *Singer* has any bearing on defendants' ability to concede particular elements of a crime. Indeed, under the dissent's logic, Rule 23(a) would require a defendant to obtain the Government's consent to a guilty plea because by pleading guilty, the defendant will have, in effect, "waive[d] his right to a jury trial." *Dissent* at 1426.

Finally, the dissent raises a host of practical concerns about our disposition of these two cases. Its "long list of difficult ques-

tions," *Dissent* at 1428, consists primarily of issues not before us. When, if ever, the dissent asks, could a defendant withdraw a stipulation? Under Federal Rule of Evidence 609(a), may the Government impeach a testifying defendant with his prior offenses? When must a defendant make the offer to concede and must it be in writing? While these may be "obvious questions" to our dissenting colleagues, *Dissent* at 1429, we need address none of them because Crowder and Davis chose not to withdraw their concessions, neither took the stand, and the Government did not challenge the timing and form of either concession. We think it best to leave resolution of these issues in the first instance to the district courts.

### IV.

We reverse Davis's conviction and remand for a new trial. We remand Crowder's case for the district court to determine, in accordance with this opinion, whether the bad acts evidence's probative value is substantially outweighed by the danger of unfair prejudice. Because we remand both cases, we do not reach the other issues that defendants raise.

*So ordered.*

SILBERMAN, Circuit Judge, concurring, with whom BUCKLEY and WILLIAMS, Circuit Judges, join:

I join Judge Tatel's opinion because I think the majority's construction of Rule 404(b) is the correct one. The second sentence of the Rule sets forth so many permitted uses to be distinguished from the first sentence's proscribed use as to suggest a certain ambivalence on the part of the draftsmen as to the Rule's wisdom. But, if we are to take their words at face value, we simply do not get to the second sentence of the Rule if some purpose such as proof of knowledge, intent, etc. is not at issue in the case. Normally, I would think it inappropriate to opine as to the policy underlying a statute I am obliged to apply. But in this case we deal with the Federal Rules of Evidence which, although adopted by Congress, originate with the federal judiciary. Therefore, I feel free to express my view, which is that the ratio-

nale of the Rule—at least in its full sweep— is misconceived, indeed silly.

To be sure, evidence of prior bad acts that are *unrelated* to the crime charged should normally be excluded. It simply would not do to allow the prosecution to show that the defendant is of general bad character. Not only is that approach unfairly prejudicial to the defendant while providing little probative value, but it also would turn our criminal trials into even more of a circus than they have become. On the other hand, evidence that a defendant charged with a drug distribution crime has previously committed drug distribution crimes should be admissible to show likelihood (propensity, if you will) that the defendant did it again. Probably no segment of American society, other than many of its lawyers (and judges), would think that such reasoning is somehow unreliable. And the vast majority of other countries readily admit such evidence. England, our common law ancestor, is one of the very few countries that in the past has excluded such evidence, but even it has shifted the focus of its admissibility inquiry to the probative value of the evidence rather than the purpose for which it is offered. *See Office of Legal Policy, Report to the Attorney General on the Admission of Criminal Histories at Trial*, 22 J. LAW REFORM 714, 750–52 (1989); Edward J. Imwinkelried, *Undertaking the Task of Reforming the American Character Evidence Prohibition: The Importance of Getting the Experiment Off on the Right Foot*, 22 FORDHAM URB. L.J. 285, 285–86 (1995). As I understand Judge Randolph's position, it would essentially accomplish this result, but I feel obliged to await the intervention of one of the policymaking organs east of us.

ROGERS, Circuit Judge, concurring:

The court concludes that Federal Rule of Evidence 404(b) should have prohibited the introduction of evidence of Horace Lee Davis' prior drug sales in his trial for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). In so doing, the court proceeds on the assumption

that Davis would have been willing "to accept the type of [jury] instruction" formulated in the court's opinion. *Op.* at 1412. This assumption not only makes the court's task less difficult, but also changes the analysis by permitting the court to bypass several difficult questions, not least of which is what ought to happen if a defendant objects to the court's instruction. In my view the assumption is proper because of the concession at oral argument to the in banc court that, in light of their concessions to intent and knowledge, the jury should be instructed that it "must convict" the defendants if it finds that the government has proved beyond a reasonable doubt that they possessed the drugs.[1] Such an instruction would, as the court requires, "completely remove[ ] from the trial" the conceded elements.[2] Under the circumstances, as the court points out, the only probative value of prior bad acts offered to prove intent and knowledge is to show propensity.[3] *Op.* at 1410. Hence, I concur in the conclusion that Rule 404(b) bars admis-

sion into evidence of Davis' prior drugs sales. I write separately to emphasize what the court's opinion does not say and to acknowledge several issues that the court does not reach, but that will arise if a defendant declines to acquiesce in the court's instruction.

As the case has progressed in this court—from briefing and oral argument presented to a three-judge panel to new briefing and oral arguments before the in banc court—the question of how the jury should be instructed regarding a defendant's concession has assumed greater importance. At least three types of instructions have been discussed. First, there is the standard type of instruction given when there is an actual stipulation, as opposed to a unilateral concession. In this instruction, the jury is told that it *"may* consider" the stipulated fact "proven."[4] Second, there is the type of instruction that was discussed in questioning by the court during the in banc argument and to which the defense agreed during the argument. This instruction, also raised by the court during the

---

1. In reply argument after the government had completed its argument to the in banc court, counsel for appellant Davis conceded that the jury should be instructed that it must convict Davis if the government proved the only remaining element—possession—beyond a reasonable doubt. Counsel for appellant Crowder, who filed a joint brief with Davis, heard the court's questions about the "must convict" concession, and argued thereafter, did not dissociate himself from this concession. *See Op.* at 1412.

2. The court emphasizes that its Rule 404(b) analysis depends upon an instruction that eliminates the conceded elements from the jury's consideration. In addition to requiring that "the conceded elements must be completely removed from the trial," *Op.* at 1411, the court, in describing the role of the jurors, states they should be instructed that "to convict they need find only possession beyond a reasonable doubt." *Id.* at 1416. In addition to referring at several points to "no need to prove either element" language, *id.* at 1410, 1411, the court expressly relies on Davis' assumed willingness "to accept an instruction limiting the jury's consideration to the possession element of the crime ... completely reliev[ing] the Government of having to prove knowledge and intent." *Id.* at 1412; *see also id.* at 1415. It repeats this point in discussing the weighing that would occur under Rule 403 were the other bad acts evidence proffered to show motive, stating that "as long as a defendant remains willing to concede knowledge and intent to distribute and to accept an instruction limiting

the jury's consideration to possession," the court should exclude those elements from the balancing process. *Id.* at 1412. To meet these standards, the court suggests an instruction that "the Government *need not* prove" the conceded elements, *id.* at 1411; the language of its opinion indicates, however, that its suggested instruction is tantamount to a *"must* convict" instruction.

3. The extrinsic bad acts evidence in the instant cases is unrelated to the factual circumstances of the charged offenses and does not provide contextual or background information to the jury, so its exclusion would not impair the government's ability to make a full presentation of its evidence to prove the charges. The exclusion of extrinsic bad acts evidence is thus different from the potential exclusion of evidence intrinsic to the offense that concerns the dissent. *Diss. op.* at 1418 & n.2. Even after a defense concession, intrinsic evidence may still be admissible to permit the jury to understand the nature and circumstances of the charged offense, and it may also be relevant to unconceded elements or an affirmative defense. *See United States v. Cockerham*, 476 F.2d 542, 545 (D.C.Cir.1973) (per curiam).

4. The standard instruction provides: "The government and the defendant[s] may stipulate—that is, agree—to certain facts. Any stipulation of fact is undisputed evidence, and you *may* consider it proven." CRIMINAL JURY INSTRUCTIONS, DISTRICT OF COLUMBIA 1.04 (4th ed.1994). *See also id.* 2.04 (instruction at end of case, substantively identical). *See infra* n.7.

panel argument in Crowder's case,[5] tells the jurors that if they find that the government has proved the unconceded element(s) beyond a reasonable doubt, the jury *"must convict"* the defendant. Finally, there is the type of instruction formulated in the court's opinion, in which the jury is told that the government *"need not* prove" the conceded elements.[6]

Appellants' acceptance of a "must convict" instruction eliminates any need for the court to reach several thorny questions that would otherwise have arisen. First, we need not determine whether a "need not prove" instruction or a "must convict" instruction could be forced on an unwilling defendant as the price of excluding prejudicial other bad acts evidence under Rule 404(b). The government assumed in its brief to the in banc court that the standard "may consider" instruction, given when the parties reach a stipulation, would be given in the event of a unilateral concession,[7] Brief for Appellee at 23 n.13, and appellants do not address the precise nature of the instruction in their joint brief to the in banc court. Nor did the district courts reach the issue in appellants' trials. Our sister circuits have recently grappled with the issue of how to instruct the jury as to a stipulated or conceded element.[8] Three panels, two of them split 2–1, have come to differing outcomes, and one court has decided to reconsider the question in

banc. *United States v. Mason,* 85 F.3d 471 (10th Cir.1996); *United States v. Muse,* 83 F.3d 672 (4th Cir.1996); *United States v. Jones,* 65 F.3d 520, *opinion vacated and rehearing in banc granted,* 73 F.3d 616 (6th Cir.1995). Because of appellants' concession, we need not sort out many issues that arise in formulating a proper jury instruction. For example, the court has no occasion to inquire whether the general rule against partial verdicts in criminal trials [9] would be violated by either the "need not prove" or "must convict" instructions. Nor need we consider whether such instructions, over the defendant's objection, would improperly interfere with the jury's power of nullification. *Compare United States v. Pierre,* 974 F.2d 1355, 1357 (D.C.Cir.1992), *cert. denied,* 507 U.S. 1012, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993), *with United States v. Hayward,* 420 F.2d 142, 143–46 (D.C.Cir.1969). *See also United States v. Washington,* 705 F.2d 489, 494 (D.C.Cir.1983); *United States v. Dougherty,* 473 F.2d 1113, 1130–37; *id.* at 1139–44 (Bazelon, C.J., concurring in part and dissenting in part). Instead, because appellants have represented that they will not object to a "must convict" instruction on remand, our task is simplified.[10] *See United States v. Mezzanatto,* —— U.S. ——, —— – ——, 115 S.Ct. 797, 801–02, 130 L.Ed.2d 697 (1995).

Nonetheless, the fortuitous circumstances arising from the eleventh-hour concession to

---

**5.** Oral Arg. Tr. at 16, Appeal No. 92–3133, Jan. 30, 1995.

**6.** *See* Daniel J. Buzzetta, Note, *Balancing the Scales: Limiting the Prejudicial Effect of Evidence Rule 404(b) Through Stipulation,* 23 FORDHAM URB L.J. 389, 411 (1994) (suggesting instruction that "the prosecution need not prove" the conceded element).

**7.** The government's brief also implicitly assumes that the standard stipulation instruction applies even if the stipulated fact constitutes an element of the offense. Several courts have in fact used a similar instruction under those circumstances. *E.g., United States v. Branch,* 46 F.3d 440, 442 (5th Cir.1995) (per curiam); *United States v. Ragosta,* 970 F.2d 1085, 1088 n. 1 (2d Cir.), *cert. denied,* 506 U.S. 1002, 113 S.Ct. 608, 121 L.Ed.2d 543 (1992).

**8.** In approving the approach of the First, Second, Eighth, and Eleventh Circuits, *Op.* at 1410,

the court finds no opinion that involves or requires a "must convict" instruction. *See, e.g., United States v. Figueroa,* 618 F.2d 934, 942 (2d Cir.1980) (suggesting jury be instructed that it "can" revolve undisputed issues against the defendant).

**9.** *See* Edward J. Imwinkelried, *The Right to "Plead Out" Issues and Block the Admission of Prejudicial Evidence: The Differential Treatment of Civil Litigants and the Criminal Accused as a Denial of Equal Protection,* 40 EMORY L.J. 341, 353–56 (1991) (describing historical rule and weight of authority in the federal and state courts against "special pleas" and suggesting it is an anachronism); 22 CHARLES A. WRIGHT & KENNETH A. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5194 at 198–99 (1978); *id.* § 5164 at 44.

**10.** Of course, the district court cannot avoid these problems simply by declining to inform the jury of the conceded elements at all. *United States v. Fennell,* 53 F.3d 1296, 1302 (D.C.Cir. 1995).

a "must convict" instruction should not mislead the district court and the Bar. Without such an instruction, the parties agree that the conceded elements remain in the case. Consequently, with the standard "may consider" instruction, the conceded elements would not, as the court requires, be "completely removed from the trial," *Op.* at 1411, and evidence of the prior bad acts could not be excluded on the basis of Rule 404(b) alone. Under our well-established analysis of other bad acts evidence, the first question is whether the evidence is relevant for any purpose other than to show propensity; if it is, the court must proceed to the second step, which is to balance probative value against prejudicial effect pursuant to Rule 403. *United States v. Washington,* 969 F.2d 1073, 1080–81 (D.C.Cir.1992), *cert. denied,* 507 U.S. 922, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993). Without an instruction that truly conveys to the jury that it must not consider whether the government has met its burden of proof on the conceded elements, the other bad acts evidence offered to prove those elements would be relevant. It might be almost devoid of probative value in light of the concessions, but it would not be irrelevant. Thus, had appellants not accepted a "must convict" instruction, their appeals could not be resolved simply by reference to Rule 404(b); rather, the question would be, under Rule 403, whether the acknowledged prejudice flowing from other bad acts evidence substantially outweighed whatever probative value remained after the concession.[11]

This is the position taken by all parties in the briefs to the in banc court. Notwithstanding defense concessions to intent and knowledge, the bad acts evidence may yet be relevant under Rule 401, even if only marginally so, where the jury is instructed that it "may" or "can"[12] consider those elements proven as a result of the concession. Under these circumstances, the government argues, the defendant's concession is "a factor to be considered by the district court when it balances the probative value and prejudicial effect of the bad-acts evidence" under Rule

403. Brief for Appellee at 7. Appellants' joint brief also argues the case in terms of Rule 403, contending that the concession dissipates the probative value of the other bad acts evidence, and that, "[b]ecause of the unique nature of extrinsic act evidence, a proffered stipulation always will tip the Rule 403 balance in favor of exclusion of the evidence," at least in the "absen[ce][of] particularized findings of unusual or extraordinary circumstances in which the probativeness of the evidence outweighs its prejudice to the accused." Brief for Appellants at 25; Reply Brief for Appellants at 3. Thus, the parties see the issue as turning on Rule 403, differing only on how strongly the concession affects the probative-prejudicial balancing.

The point is simply that appellants' eleventh-hour acceptance of a "must convict" instruction should not confuse an understanding of the court's analysis. Without such an instruction, *supra* n. 2, intent and knowledge would remain in the case for the jury to decide, as the parties recognize in their briefs. If the standard "may consider" instruction on stipulations were given instead, the other bad acts evidence in these appeals would be addressed with reference to Rule 403; the analysis would not stop with the first sentence of Rule 404(b). Whether the standard instruction or other formulations could or should be given remains, along with several other difficult issues, for another day.

RANDOLPH, Circuit Judge, with whom Circuit Judges GINSBURG, SENTELLE, and HENDERSON join, dissenting:

Three decades ago, a unanimous Supreme Court said that although a defendant can waive his right to be confronted by the witnesses against him, "it has never been seriously suggested that he can thereby compel the Government to try the case by stipulation." *Singer v. United States,* 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965). Today our court does more than just suggest

**11.** *See* 2 Jack B. Weinstein, et al., Weinstein's Evidence ¶ 404[08] at 404–49 (1992) ("Rule 404(b) is a specialized rule of relevancy.... Evidence which [is relevant and not barred by Rule 404] must, in addition, satisfy the balancing test imposed by Rule 403....").

**12.** *See supra* n. 8.

the idea; the court imposes it as the law of this circuit.

The rationale sounds straightforward. Under Rule 404(b) of the Federal Rules of Evidence, the government may introduce evidence of a defendant's other offenses to prove, among other things, his intent to commit the offense charged. But if a defendant offers to concede intent and agrees to a suitable jury instruction, the government "no longer needs to prove" intent. *Maj. op.* at 1411. Ergo, the government need not—and, under Rule 404(b) cannot—introduce evidence of the defendant's other offenses.

The simplicity of this logic is an illusion, for having stated the rationale the majority quickly realizes the need to qualify it. And so the opinion announces more than a few conditions and exceptions and provisos. In the process, the Federal Rules of Evidence are rewritten; a model jury charge is invented; the complication of multi-defendant cases, common in the federal courts, is all but ignored; and trial judges are instructed to conduct some sort of limited, modified plea hearing which the majority writes into the Federal Rules of Criminal Procedure but does not bother to describe. There are many other loose ends, but as we shall see the devil is not just in the details.

I foresee the majority's newly coined code, with all its many embellishments, creating such a mess in criminal trials that ultimately we will come to our senses and abandon it, unless higher authority or fresh legislation intervenes and does the job for us.[1] I will get to the practical problems with the majority's ruling, but I want to deal first with the theory underpinning it, a theory I consider quite flawed.

## I

Let us begin by getting rid of any idea that we are dealing with stipulations. We most certainly are not. A stipulation is an agreement. No agreements were reached in the two cases before us. All we have here are defense offers to stipulate, offers the prosecution rejected in both cases. The initial question thus cannot be what consequences flow from a stipulation. It must be what effect a defense concession has on the presentation of the government's case. The majority gives this answer—whenever a defendant offers to concede an element of the offense, that element is "completely removed from the trial" and the government therefore cannot introduce other-offense evidence to prove it. *Maj. op.* at 1410–1411.

There are two things worth noticing about the majority's proposition. The first is that it makes everything turn on what the defendant is conceding; nothing depends on the type of evidence the government has waiting in the wings. The government's proof might be in the form of eyewitness testimony, or it might be a written confession, or it might be descriptions of the defendant's other crimes. No matter. If the defendant concedes the element of intent, the government is barred from introducing evidence to prove it. Intent, then, becomes a non-issue, "completely removed from the trial," a matter of no consequence in the case.

This is a revolutionary idea, and one that will have enormous repercussions in criminal trials. The logical consequence of the majority's theory is breathtaking. The theory will bar not just Rule 404(b) evidence, but *all other evidence of intent.* Why? Because the other evidence of intent will be drained of its relevance. It will no longer relate—in the words of Rule 401—to a fact of consequence at trial. The defendant's concession will, according to the majority, have taken intent out of the case; Rule 402 will therefore demand exclusion of *all* evidence relating to intent.

In Crowder's case, for instance, the government showed that he possessed a beeper when he was arrested. The presence of the beeper made it more likely that Crowder was

---

1. The federal courts of appeals are increasingly divided on this issue, *see maj. op.* at 1409–1411, and the Supreme Court appears to be interested in addressing it. *See United States v. Old Chief,* 56 F.3d 75 (9th Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 907, 133 L.Ed.2d 840 (1996); *Hadley v. United States,* 503 U.S. 905, 112 S.Ct. 1261, 117 L.Ed.2d 491, *cert. dismissed as improvidently granted,* 506 U.S. 19, 113 S.Ct. 486, 121 L.Ed.2d 324 (1992). As to the prospect of a legislative response, *see infra* note 4, discussing the California experience.

in the business of drug dealing, that he intended to distribute the drugs he possessed—the "ultimate fact" the majority says the government need not, and therefore cannot, prove on retrial. The government also presented expert testimony that the amount of drugs Crowder possessed could not have been for personal use. Again, this evidence related to Crowder's intent to distribute. While the majority might like to limit its *rule* to other-offense evidence, *maj. op.* at 1414, the necessary and logical consequence of the majority's *theory* is that neither the beeper nor the expert testimony would be relevant, intent already having been established as a result of the offer to stipulate. The same result—exclusion of prosecution evidence whenever the defense considers it strategically advantageous to offer a stipulation—will obtain in countless other cases.[2]

The second thing to notice about the majority's proposition is that it thoroughly misstates the law. The Supreme Court could not be clearer on the subject: a defendant's plea of "not guilty" puts the government to its proof on every element of the crime charged. *Mathews v. United States*, 485 U.S. 58, 65, 108 S.Ct. 883, 887–88, 99 L.Ed.2d 54 (1988). The defendant may choose to challenge each of those elements, to concede some and challenge others, or to sit back and do nothing. Whatever choice he makes, the government still bears the burden of proof. That is the very point of *Estelle v. McGuire*, 502 U.S. 62, 69, 112 S.Ct. 475, 480–81, 116 L.Ed.2d 385 (1991): the "prosecution's burden to prove every element of the crime is

not relieved by a defendant's tactical decision not to contest an essential element of the offense."

It necessarily follows that despite a defendant's concession, whether in the form of an offer to stipulate or otherwise, the government's proof of intent—including its Rule 404(b) evidence—remains relevant under Rule 401 because it tends to make a fact of consequence (intent) more likely than it would be without the evidence. The evidence therefore remains admissible despite the defendant's concession because Rule 402 makes all relevant evidence admissible, unless some other rule excludes it. Discretion to exclude relevant evidence exists, but Rule 403 gives the discretion to the district court, not to the court of appeals. The point bears repeating—even if a defendant concedes intent, the government still must prove intent beyond a reasonable doubt.

The majority's analysis of the Federal Rules of Evidence mentions none of this. It begins with Rule 404(b), and there it ends. The opinion describes Rule 404(b) as a "specialized rule of admissibility" for other-offense evidence. *See maj. op.* at 1414. It is more accurate to speak of it as a specialized rule of "relevancy," as the framers of the rules suggested.[3] The important point, lost in the majority opinion, is that this "specialized rule" specifically *allows* the government to introduce other-offense evidence to establish intent so long as intent remains at issue, as it surely does despite the defendant's concession. Criminal defendants cannot block

**2.** Two examples should suffice. In an assault case, the prosecution seeks to introduce a doctor's testimony describing the victim's wounds; the defendant, claiming the assault was justified, offers to stipulate that he attacked the victim. Under the majority's theory, the doctor's testimony must be excluded. *But see Oregon v. Young*, 52 Or. 227, 96 P. 1067, 1068 (1908) (allowing the testimony because "the right to offer and have received evidence relevant and material to the issue cannot be taken away by the defendant admitting or offering to admit that the part of the charge sought to be proven is true"). Or in a prosecution for distributing obscene material, the prosecution seeks to introduce the film. The defense offers to stipulate that the film is obscene. *Parr v. United States*, 255 F.2d 86, 88 (5th Cir.), *cert. denied*, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958), holds that the film still may

be introduced. The theory underlying the majority opinion in this case dictates the opposite result.

**3.** *See* FED.R.EVID. 401, advisory committee's note, describing Rule 404 as a rule addressing one of several frequently recurring "relevancy problems." It is not strictly a rule of admissibility. Other-offense evidence offered for a legitimate purpose under Rule 404(b) is not automatically admissible; like other relevant evidence, it must pass the balancing test of Rule 403 before it can come in. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (*in banc*), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); FED R.EVID. 404(b), advisory committee's note; 2 JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 404[18] (1995).

the government's evidence and dictate the prosecution's trial strategy by conceding, admitting, refusing to contest, or—under "the weight of authority in the federal courts"—offering to stipulate to the fact the government's evidence will tend to prove. 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5194, at 198–99 (1978).

Today's ruling will mark the beginning of a sweeping change in the conduct of criminal trials, a change the Federal Rules of Evidence do not countenance. My colleagues in the majority do not see it that way, of course. Any right-minded prosecutor, they seem to think, ought to welcome the incentive the court is giving defendants to offer stipulations and thereby remove factual issues from the jury. The idea must be that prosecutors who nevertheless insist on using other-offense evidence must be moved by a desire to convince the jury the defendant is a bad person and, hence, guilty of the offense charged, the very thing Rule 404(b) forbids. I do not share this psychological insight about prosecutors. There is, the Supreme Court has reminded, a broad "public interest in having juries receive all probative evidence of a crime." *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984); *see United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974); *Taylor v. Illinois,* 484 U.S. 400, 411–12, 108 S.Ct. 646, 654, 98 L.Ed.2d 798 (1988). A prosecutor's insistence on presenting the evidence promotes that public interest. That a prosecutor prefers live testimony and documentary evidence of intent to a cold—and, as we shall see, problematic—jury instruction on a stipulation seems to me a legitimate trial strategy, one that courts should not and cannot second guess. *See, e.g., United States v. Allen,* 798 F.2d 985, 1001 (7th Cir.1986) (recognizing that a "cold stipulation ·can deprive [the government] of the legitimate moral force of [its] evidence, and ... can never fully substitute for tangible, physical evidence or the testimony of witnesses"); *United States v. Pedroza,* 750 F.2d 187, 201 (2d Cir.1984); *United States v. Ellison,* 793 F.2d 942, 949 (8th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986).

Underlying nearly all of the majority's theory is the assumption that placing Rule 404(b) evidence before the jury is unduly prejudicial—prejudicial, that is, because the jury will reach its verdict on a basis other than the weight of the evidence. This is unsupportable. The majority would be correct only if juries routinely disregarded the standard cautionary instructions relating to such evidence. *See* FED.R.EVID. 105. Yet there is no indication that juries do so. The majority acknowledges, *maj. op.* at 1415, that juries are "presumed to follow a trial court's instructions." *United States v. Jackson,* 627 F.2d 1198, 1213 (D.C.Cir.1980) (citing *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367, 83 S.Ct. 448, 463–64, 9 L.Ed.2d 357 (1963)). Courts—including this one—have questioned the efficacy of jury instructions on other-offense evidence. *See, e.g., United States v. Daniels,* 770 F.2d 1111, 1118 (D.C.Cir.1985). But in adopting the Federal Rules of Evidence, Congress decided, as a general matter, that the "potential prejudicial effect of Rule 404(b) evidence" was not significant and that it was more important to ensure "that restrictions would not be placed on the admission of such evidence." *Huddleston v. United States,* 485 U.S. 681, 688–89, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). A limiting jury instruction, while not perfect, is the only way to protect the rights of the accused while giving effect to the intent of Congress. *Cf.* 1 JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 105[02] (1995).

I do not mean to minimize the danger of undue prejudice from other-offense evidence. *See* FED.R.EVID. 404(a), advisory committee's note (quoting Cal. Law Revision Comm'n, Rep., Rec. & Studies 615 (1964)). But district judges are far better situated to deal with this problem by applying Rule 403. As the Advisory Committee wrote, the district judge must determine whether the "undue prejudice" of other-offense evidence substantially "outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." FED.R.EVID. 404(b), advisory committee's note. While a defendant's concession or offer to stipulate is not "proof," it may serve the same function, and the trial judge should

factor it into the 403 balance. That is the analysis the Advisory Committee envisioned, *see id.*, and it is one this court has endorsed. *See United States v. Dockery*, 955 F.2d 50 (D.C.Cir.1992). On the other hand, the majority precludes trial judges from reaching the crucial, case-sensitive Rule 403 balancing and instead legislates into law the sort of "mechanical solution" to other-offense issues the framers of Rule 404 rejected. *See* Fed. R.Evid. 404(b), advisory committee's note.

That is not the only way in which the majority has departed from the Federal Rules of Evidence. Indeed, it is not even the only way in which the majority has departed from Rule 404(b). The majority claims to ground its holding in Rule 404(b), but the holding itself applies only to *some* of the evidence Rule 404(b) specifically allows. The government may introduce other-offense evidence for "purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed.R.Evid. 404(b). The majority, on the other hand, applies its exclusionary rule to two of these items—"intent" and "knowledge"—but not to "motive." Why? Because the majority thinks it can formulate an airtight knowledge-and-intent jury instruction to offset its exclusion of the government's evidence, but is unable to do the same with respect to evidence of motive. Yet the majority's model instruction is itself riddled with holes. And just as bad, it is designed for one-defendant criminal trials despite the fact that, at least in drug cases, multi-defendant trials are the norm. I will have more to say on these subjects in a few moments, after we are done with the Federal Rules of Evidence.

In addition to Rule 404(b), Rule 401, the rule governing relevancy, undergoes a makeover. The majority declares that because a defendant's offer to stipulate takes the issue of intent out of the case, the government's evidence of intent is no longer admissible. The "because" is wrong for reasons I have already given. The other part of the proposition is wrong as well because the drafters of Rule 401 specifically rejected this very idea—namely, that evidence is relevant only when directed to a disputed fact. Rule 401 is derived from a provision of the California Evidence Code defining relevant evidence as evidence of "any disputed fact that is of consequence to the determination of the action." Cal. Evid.Code § 210. In drafting Rule 401, the framers deleted the word "disputed." The majority fails to comprehend the importance of that deletion. It represented "a significant change in the law, [and] the Advisory Committee did not flinch in acknowledging [its] intent. The Note states flatly: 'The fact to which the evidence is directed need not be in dispute.'" 22 Wright & Graham, *supra*, § 5164 (quoting Fed.R.Evid. 401, advisory committee's note).[4] Professors Wright and Graham suggest that the framers' decision to delete "disputed" was "sponsored" by the Justice Department to prevent courts from doing exactly what the majority is doing here: concluding "that the defense can bar the introduction of [other offense evidence] by offering to stipulate to the fact it is supposed to prove." 22 Wright & Graham, *supra*, § 5164.

## II

Legal theory aside, the majority's revisions of the Federal Rules of Evidence strike me

---

4. A defendant can, in some circumstances, concede away the government's other-offense evidence under the California rule. *See People v. Hall*, 28 Cal.3d 143, 167 Cal.Rptr. 844, 616 P.2d 826 (1980). In *Hall*, the Supreme Court of California explained that "if a defendant offers to admit the existence of an element of a charged offense, the prosecutor must accept that offer and refrain from introducing evidence of other crimes to prove that element to the jury." 28 Cal.3d at 152, 167 Cal.Rptr. 844, 616 P.2d 826. Even though the state's evidence code differed from the Federal Rules, the California court recognized some limitations that the majority today ignores: The other offense evidence would come

in despite the offer to stipulate if it remained "relevant to an issue not covered by the stipulation" or if precluding it would "force the prosecution to elect between theories of guilt, or would hamper a coherent presentation of the evidence on the remaining issues." *Id.* at 152–53, 167 Cal.Rptr. 844, 616 P.2d 826.

This narrowly drawn rule was apparently too much for California's voters, who overturned at least part of *Hall* with an amendment to the state's constitution. *See People v. Bouzas*, 53 Cal.3d 467, 476, 279 Cal.Rptr. 847, 807 P.2d 1076 (1991) (discussing Cal. Const. Art. I, § 28(f)).

as exceedingly unwise. For every loophole the majority creates and then tries to close, another opens, and with every exception and qualification the majority adds, more problems crop up. Rule 404(b) is a fairly straightforward rule; in the majority's hands, it becomes as intricate as a Gothic carving.

## A

Consider first the problems the majority creates and then at least tries to solve. My colleagues recognize that their holding might sweep much too broadly. Evidence of intent often goes to something more than just the element of intent. *Maj. op.* at 1412. The charge in these cases—possession with intent to distribute crack cocaine—illustrates the point. In proving that the defendant intended to distribute the crack, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits. Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact—motive—from which it could in turn infer the element of possession. Thus, the other-offense evidence of intent would have probative value not just on the intent element Crowder and Davis wanted to concede, but also on the possession element they hotly contested. The majority therefore must carve out an exception to its rule, which it does in this fashion: if the other-offense evidence offered to prove intent also may be used to infer motive and then possession, the majority's Rule 404(b) *per se* exclusionary rule does not apply.

Next, to avoid impermissibly "weakening the government's ability to prove its case," the majority says that its rule will apply only when the defendant's "offer to concede" is "unequivocal." *Maj. op.* at 1411. What qualifies as "unequivocal"? The majority

thinks the stipulations offered by Crowder and Davis do, but I cannot comprehend why. Both offers seem to me of uncertain and doubtful significance, which is how my dictionary defines "equivocal," not its opposite. Take Crowder's offer. He was willing to stipulate that "anybody who possessed those drugs possessed them with the intent to distribute." But "anybody" was not on trial. Crowder was. And it was Crowder's intent, not "anybody's," that the prosecution had to establish to the jury's satisfaction. The stipulation Davis offered is of a piece. It mentioned only some hypothetical drug dealer, some "person." [5] Yet the prosecution's evidence of Davis's prior crack cocaine offenses—offenses close in time and place to those charged in the indictment—was not meant to show that *someone* had intent and knowledge. The evidence was introduced to prove that *Davis* had the intent to distribute the crack and that *Davis* knew what he was possessing. Davis's proposed stipulation could not possibly have substituted for such proof. It did not even mention him by name.

Even if one subscribed to the majority's view that the proposed stipulations to intent were "unequivocal," I cannot see how this could possibly lead to the banning of the Rule 404(b) evidence in Crowder's trial. The government's proof of Crowder's other crime had legitimate probative force with respect to matters beyond those encompassed in his proposed stipulation. The prosecution introduced evidence of Crowder's other crime to prove three things: Crowder's "knowledge of the substance within his possession, his specific intent to distribute, and his *modus operandi.*" One of the charges against Crowder was possessing with intent to distribute crack cocaine.[6] Crowder threw away a brown paper bag as he ran from the police to avoid arrest. The paper bag contained wax-paper

---

**5.** "Mr. Davis is willing to stipulate that the person who sold the undercover officer the drugs in this case had the intent to distribute any and all drugs recovered by the police, both through their purchase and through the seizure [of the drugs in the car], and that the individual also knew of the drugs recovered from the car."

**6.** For a jury to find a defendant guilty of that offense, the government must prove, among oth-

er things, that the defendant possessed crack cocaine, that he did so knowingly and intentionally—that is, "consciously, voluntarily and on purpose, and not mistakenly, accidentally or inadvertently"—and that when the defendant possessed the crack, he had the specific intent to distribute it. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 4.29(B) (4th ed.1993).

packets of heroin and ziplock bags of crack. Some of the ziplock bags were clear; others were dark. The clear bags contained a larger amount of crack than the dark bags. The government's other-offense evidence showed that six months after his arrest here, the police caught Crowder selling crack cocaine on the same block. Crowder held up two ziplock bags to an undercover officer. One bag was clear; he offered it for $20. The other bag was dark; it contained a smaller amount of crack of less purity; he offered it for $10.[7] As the government told the court, Crowder's other offense was thus relevant to several matters "of consequence," *see* Fed. R.Evid. 401, at trial. In terms of Rule 401, it was more probable with the evidence than without it that Crowder *intended* to distribute the crack cocaine in the brown paper bag. On the other occasion when he had crack cocaine in his possession, he sold it. It was more probable with the evidence than without it that Crowder *knew* the material in the ziplock bags was crack cocaine, just as he knew the substance in the ziplock bag he sold to the undercover officer was crack cocaine. And it was more probable with the evidence than without it that Crowder *knowingly* possessed the crack cocaine recovered from the brown paper bag. Those drugs, like the drugs recovered in Crowder's sale to the undercover officer, were packaged in a distinctive manner. Crowder's offer to stipulate dealt only with intent and therefore did not even come close to covering everything the government's Rule 404(b) evidence legitimately proved against him.

The majority addresses a small part of this problem with yet another qualified exception, and yet another complication for our circuit's district judges. Here is the qualification: the majority's so-called *per se* exclusionary rule does not apply if the government introduces other-offense evidence to prove the defendant's experience-based knowledge of the drug trade insofar as it may be probative of possession.[8] *Maj. op.* at 1413–1414. In that event, admissibility will turn on probative value-unfair prejudice balancing pursuant to Rule 403. But this will be no ordinary balancing, and that is where the complication enters. The majority declares that, in conducting the Rule 403 inquiry, the trial judge must not give any thought to the probative value of such evidence regarding intent or knowledge because, as the majority sees it, the defendant's concession will have removed those elements from the case. *Maj. op.* at 1412. But what if the trial judge decides to allow the other-offense evidence to come in? Then, the defendant, having conceded intent and knowledge solely to keep this evidence out, will have given up something for nothing. All bets will be off. The defendant's concession will not hold. Intent and knowledge most certainly will be in the case, and the government's Rule 404(b) evidence will wind up being used to prove them. Yet the majority instructs the district judges to pretend this will not happen, although it will, and to conduct these Rule 403 inquiries as if the defendant's concession will remain after the reason for it is gone. More wheels within wheels.

**B**

Let us now move on to the majority's model jury instruction, designed to offset barring the government's evidence. First the reality—neither Crowder nor Davis proposed an instruction. If their counsel had one in mind, it naturally would have been the standard, universally accepted, charge on a

7. The majority claims this evidence could not be admitted to show *modus operandi* because the apparent marketing tactics were not "strikingly similar." *Maj. op.* at 1413. However, evidence is admissible to show *modus operandi* even if the similarity is not complete. "[I]t is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence." *United States v. Sliker,* 751 F.2d 477, 487 (2d Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985) *and* 471 U.S. 1137, 105 S.Ct. 2679, 86 L.Ed.2d 697 (1985).

8. Of course, a defendant's hands-on experience in the drug trade cannot alone prove that he possessed drugs on any given occasion. But it can show that he knew how to get drugs, what they looked like, where to sell them, and so forth. Evidence of a defendant's experience in dealing drugs—evidence, that is, of his "bad acts"—thus may be a "brick" in the "wall" of evidence needed to prove possession. *See* Fed.R.Evid. 401, advisory committee's note.

stipulation. This has the judge telling the jurors: "[Y]ou may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts." 1 EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 12.03 (4th ed.1992); *see also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, *supra,* Instruction 2.04 ("Any stipulation of fact is undisputed evidence, and you *may* consider it undisputed evidence.... You *may* consider ... stipulated testimony as exactly what the witness would have said had s/he testified.") (emphasis added).

Although defense counsel would gleefully accept such standard instructions on stipulations, the majority has to come up with something else. Under its theory, the jury instruction is to be the *quid pro quo* for barring the government's evidence. It must give the government all it legitimately could have gained from introducing the other-offense evidence. A trial court's telling the jurors they *may* consider the conceded elements as proven will not do the trick. For the government to get its due, the instruction must somehow guarantee that the jury *will* consider the conceded elements proved beyond a reasonable doubt.

Here, according to my colleagues, is what the district court may charge the jury on remand in Davis's case:

In order to sustain its burden of proof for the crime of possession of a controlled substance with the intent to distribute the substance ... the government must prove the following three (3) essential elements beyond a reasonable doubt:

*One:* The defendant Horace Davis possessed ... the controlled substance described in the indictment; and

*Two:* The defendant knew that this substance was crack cocaine; and

*Three:* The defendant intended to distribute the controlled substance.

By Davis's agreement, the Government need not prove either knowledge or intent. Your job is thus limited to the possession element of the crime. Therefore, in order to meet its burden of proof, the Government must prove beyond a reasonable

doubt only one element of the crime, that Horace Davis was in possession of the cocaine base charged in the indictment.

2 EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 54.07 (4th ed.1990); *maj. op.* at 1411.

This instruction—like the rule underlying it—flies in the face of *Mathews v. United States,* 485 U.S. at 65, 108 S.Ct. at 887–88, and *Estelle v. McGuire,* 502 U.S. at 69, 112 S.Ct. at 480–81: the government has the burden to prove *every* element of the offense charged, and the defendant's tactical decision to "agree" that the "government need not prove" an element does not relieve the government of its burden.

That is only the first of several problems with this instruction. Here is another. In "agreeing" that he must be convicted if the government proves possession beyond a reasonable doubt, a defendant enters a partial plea of guilty, *see United States v. Reedy,* 990 F.2d 167, 169 n. 7 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 210, 126 L.Ed.2d 166 (1993), and effectively waives his right to a jury trial on the stipulated issue, *cf. Dockery,* 955 F.2d at 55. It is not at all clear that a defendant can enter a partial plea of guilty. *Compare United States v. Breitkreutz,* 8 F.3d 688, 692 (9th Cir.1993), *with United States v. Espinoza,* 641 F.2d 153, 161 (4th Cir.), *cert. denied,* 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981). But it is clear that a defendant cannot waive his right to a jury trial unless the government agrees, which it did not in these cases. *See Singer v. United States,* 380 U.S. at 36, 85 S.Ct. at 790–91. To dispense with a jury trial, the defendant must obtain "the consent of the government," FED.R.CRIM.P. 23(a), because "the Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before" a jury, "the tribunal which the Constitution regards as most likely to produce a fair result." 380 U.S. at 36, 85 S.Ct. at 790.

Consider how this "tribunal"—the jury—will understand the majority's instruction. Any rational juror hearing this instruction would think: "Well, Davis 'agrees' that he knew that he possessed crack and that he

intended to sell the stuff he possessed. The judge has just told us to take these as givens. And so we have to decide—did Davis possess what he knew he possessed?"

Perhaps in a single defendant case, the judge could straighten things out a bit with some further instructions, although it is hard to imagine what these might be.[9] But what if there are other defendants, as is common particularly in drug cases? In the typical multi-defendant drug case in which only some of the defendants seek to avoid Rule 404(b) evidence by proposing a *Davis*-like stipulation, the jury will hear—for the benefit of the remaining defendants—extensive instructions about the legal meaning of knowledge and intent. It will surely know the obvious—that the government cannot prove knowing possession without first proving possession. It will know as well that the government cannot prove possession with intent to distribute without first proving possession. And so when the judge instructs that for some of the defendants, knowledge and intent have already been proven—or conceded or "agreed" to, or whatever—the jury will, indeed logically must, conclude that the defendants possessed the drugs. And so, in an effort to protect defendants from being considered bad persons and hence guilty, my colleagues promulgate an instruction that convicts them by stipulation. There is truth to the adage that the main cause of problems is solutions.

To round things off, the majority's instruction happens to be in direct conflict with a charge district judges have given juries for decades. The majority would have district judges tell jurors that while the offense of possession with intent to distribute has three elements, the government "need not prove" two of them. (This "need not" language, by the way, sounds like the government had a choice and decided to pass, which conveys a misleading, confusing and potentially prejudicial impression of the government's case.)

Until today, jurors in this circuit have been told that the government must prove "*every element* of the offense with which the defendant is charged." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, *supra,* Instruction 2.08 (emphasis added). The majority acknowledges that the conflict between the two instructions would confuse jurors. *Maj. op.* at 1411. But rather than reconsider their new instruction, my colleagues simply eliminate the old one. This move would be startling enough if the majority offered some justification for it. It does not. There is absolutely no discussion of the now-abandoned instruction and not a hint of concern for the role it played in protecting defendants' Fifth and Sixth Amendment rights. *See United States v. Gaudin,* — U.S. —, —, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995) (explaining that the Fifth Amendment right to due process and the Sixth Amendment right to a trial by jury together "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt").

My colleagues have painted themselves into a corner. Despite their best efforts, they cannot come up with a jury instruction for Davis's case—let alone one that can be used in other cases—that gives the government its due without either ignoring the nature of the stipulation offers, disregarding the Constitution and the Federal Rules of Criminal Procedure, or completely confusing the jurors. Perhaps there are other, better formulations waiting to be discovered, but I doubt it.

Suppose in possession-with-intent-to-distribute cases district courts told jurors that "the defendant has conceded the elements of knowledge and intent." As I have already suggested, this could not work because it would never be true. The elements of intent and knowledge require proof that "*the defen-*

---

9. In criminal cases, trial judges are not empowered to take issues of intent and knowledge from the jury. "[A] trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction." *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73,

97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) (citations omitted). And we have said the prohibition applies even to "situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true." *United States v. Hayward,* 420 F.2d 142, 144 (1969).

*dant* knew that [the substance he possessed] was cocaine base" and that *"the defendant* intended to distribute this controlled substance." 2 Devitt, *supra,* § 54.07 (emphasis added). For good reason, neither Davis nor Crowder offered to admit what *he* knew or what *he* intended; they offered to "admit" only that "the person" (Davis) and "anybody" (Crowder) who possessed the drugs intended to distribute them.[10]

Nor will it do for district judges to tell jurors that because the defendant does not "challenge" or "contest" the elements of intent and knowledge, they must convict if the government proves possession beyond a reasonable doubt. This version is closer to being right on the facts of these cases, but it does not avoid the problems just discussed, and it is in any event wrong on the law. As I have said several times now, a criminal defendant enjoys a presumption of innocence, *e.g., Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692–93, 48 L.Ed.2d 126 (1976), and therefore need not "challenge" anything to win an acquittal. The government bears the burden of proving every element of an offense. *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). If the jury finds the government's proof inadequate, it must reach a verdict of not guilty— even if the defendant has put on no defense.

*See United States v. Alston,* 551 F.2d 315, 320 n. 21 (D.C.Cir.1976) (quoting *Perez v. United States,* 297 F.2d 12, 16 (5th Cir. 1961)). Thus, telling jurors that one of the defendants does not "challenge" or "contest" certain elements falls far short of guaranteeing the government that the jurors will take those elements as proven beyond a reasonable doubt.

### III

As application of the majority's rule to these two cases illustrates, today's decision raises a long list of difficult questions that will plague courts and counsel for years to come. My colleagues disavow any responsibility for answering most of them, but they cannot be ignored. *Maj. op.* at 1415–1416. The true test of any new rule is in its application.

And so one must ask what, exactly, is an "unequivocal" offer to stipulate? At what point—before trial, see Fed.R.Crim.P. 17.1, or during trial—must the defendant make his offer?[11] If the defendant's offer is good even if made after the trial is underway, what is to be done about the prosecutor's opening statement promising the jury that it will hear evidence of the defendant's other crimes?[12] How is a trial judge to determine

---

**10.** To admit more would have been to admit their guilt, which neither Davis nor Crowder did. This is not to say that a defendant must always admit his guilt in order to offer a stipulation to an element of the offense. In a federal prosecution for bank fraud, for example, a defendant might offer to stipulate that the bank involved was a federally chartered or federally insured financial institution. *See* 18 U.S.C. § 1344. But in a prosecution for possession with intent to distribute a controlled substance, it is difficult if not impossible to articulate a coherent offer to stipulate that would not amount to an overall admission of guilt.

**11.** The First Circuit, which follows the practice of banning Rule 404(b) evidence in the face of defense offers to stipulate, "favor[s] the practice of handling stipulations either pretrial ... or shortly after the trial has begun for the sake of clarity both at trial and on review." *United States v. Garcia,* 983 F.2d 1160, 1176 (1993). But in a typical case, the trial judge might not decide whether to admit the government's other-offense evidence until after the trial has begun. Under the majority's rule, must the defendant offer to stipulate and agree to the jury instruction

before he knows whether the judge is going to admit the other-offense evidence?

**12.** One court of appeals has tried to solve this problem by barring the government from mentioning its Rule 404(b) evidence in its opening statement and by allowing the government to present such evidence only in its rebuttal case. *United States v. Colon,* 880 F.2d 650, 660 (2d Cir.1989); *United States v. Figueroa,* 618 F.2d 934, 939 n. 1 (2d Cir.1980). This procedure, created by an appellate court, disregards the trial judge's usual discretion in controlling the "mode and order" of "presenting evidence," *see* Fed. R.Evid. 611(a), and raises problems of its own:

For example, in a narcotics prosecution, the jury will often learn for the first time of a criminal defendant's uncharged misconduct ... during the government's rebuttal case (if the evidence is offered under Federal Rule of Evidence 404(b) to prove criminal intent). The jury may well wonder why the prosecutor held back this obviously important information during the government's case-in-chief and may speculate that the prosecutor is withholding other, equally important evidence. The appar-

that a defendant's offer to stipulate is "knowing and voluntary"? *Maj. op.* at 1411. Is a full Rule 11 hearing required, attended by all the protections given those who are pleading guilty? Will something less suffice? Is anything at all necessary? [13] When, if ever, may a defendant withdraw an offer to stipulate and present evidence relating to the subject it covers? If the defendant takes the stand, may the prosecution impeach him with his prior offenses, as Rule 609(a) allows?

\* \* \*

These are just a few of the obvious questions raised by today's ruling. Many others will continue to bubble up the deeper we sink into this Serbonian Bog. Opportunities for gamesmanship will abound, as prosecutors invent additional reasons for introducing other-offense evidence and defense attorneys formulate the most innocuous-sounding, conditional stipulations they can dream up. Trial judges will be confounded and juries will be confused. Nothing in the Federal Rules of Evidence supports the majority's theory, and a careful reading of those rules should have led to its rejection. We sit here in the peace and quiet of appellate chambers, unencumbered by the time pressures of trials, assisted by a bevy of able law clerks, studying a written record of who said what, surrounded by volumes of law books, computers close at hand. Before we start devising detailed procedural rules for the conduct of trials and the government's trial strategy, we ought to remember that our rules will have to be administered in a far different setting, without many of the advantages we appellate judges enjoy. And we should recognize as well that federal trials, especially federal criminal trials, are already far too cumbersome and complicated, and already contain far too many traps for those who are conscientiously trying to perform their duty. With all respect, the majority's decision only makes matters worse.

ently belated introduction of this evidence may give rise to other adverse inferences. For example, it may lead a jury to speculate that the evidence was fabricated at the last moment ... [or] that the government itself believed that its case was weak, and that is why it introduced this additional evidence as an apparent afterthought.
Bruce A. Green, *"The Whole Truth?": How Rules of Evidence Make Lawyers Deceitful*, 25 LOY. L.A. L.REV. 699, 702–03 (1992).

**13.** The Fourth Circuit apparently believes that a full Rule 11 hearing is required. *See Espinoza,*

641 F.2d at 162. But the First Circuit thinks something less is sufficient. The First Circuit admonishes district judges to "take steps to assure that the defendant is aware of the contents of the stipulation and of its implications before directing the jury that it may resolve the issue against the defendant." *United States v. Garcia,* 983 F.2d at 1175–76. What "steps" must be taken neither the majority nor the *Garcia* court say. Nor are we told exactly what "implications" must be spelled out to the defendant, or how.